MARY C. WORTH, Respondent, *v.* HUTCHINSON H. CASE, and others, Executors, &c., of THERON B. WORTH, deceased, Appellants.

It is not essential to the validity of a promissory note, that the payee have knowledge of its nature and value when it is delivered.

A note, founded upon a good consideration, which remains in the hands of the payee until the death of the maker, is valid, although it was received by such payee, and held during the life of the maker, subject to the condition that it should be returned to the maker whenever he might wish it.

The plaintiff rendered valuable services to the defendant's testator, who was her brother, and nursed and attended him through a severe illness, for which he promised to reward her. Upon his recovery, he delivered to her a sealed envelope, superscribed with her name, and the addition, " this is not to be unsealed while I live, and returned to me any time I wish it;" signed by him. He subsequently made a will containing a bequest in her favor. After his death, she opened the envelope and found therein a writing in the form of a promissory note for $10,000, payable to her on demand, signed and duly stamped by the testator.— *Held* (LOTT, GROVER and SUTHERLAND, JJ., *contra*), this instrument was a valid promissory note, upon which the plaintiff could recover against. the estate of the testator.

(Argued March 27th, 1870; decided June 21st, 1870.)

APPEAL from an order of the General Term, second district, reversing a judgment of the Special Term, and ordering a new trial.

The trial was had before a referee, appointed in pursuance of the stipulation of the parties, with the approval of the surrogate of the county of Suffolk. The claim was for $10,000, and interest, on a note for that amount, executed by the testator to the plaintiff, and on the trial the following facts appeared :

The plaintiff and the testator were sister and brother ; and during all the transactions between them, the plaintiff resided in Corning, in the county of Steuben, and Theron B. Worth resided in the town of Southold, in the county of Suffolk, and continued to do so until his death. He visited the plain-

tiff, at her residence, several times previous to January, 1864. He visited her in the beginning of January, 1864, when he remained at Corning about four weeks. The plaintiff was not then keeping house, but had furnished rooms, at that and at the several other times, when he had previously visited her. During his visit in January, 1864, he was very ill. She gave up her room and bed to him. He spent his time entirely in her rooms. She nursed him, and bathed him, and rubbed his limbs every morning during his sickness. She went to the hotel in Corning, and brought his meals to him from there. He paid his bills at the hotel, but did not pay her anything for her services. He required a great deal of care and attention, which she bestowed upon him. Several times, during his stay with her, he spoke to her about paying for her services. He said he would pay her well for the services she performed for him, and he offered to buy her a house and lot. He left her place of residence on the 30th of January. On that day he delivered to her a sealed envelope, on which there was an indorsement in his hand writing, and signed by him in the following words: "*Mary C. Worth, this is not to be unsealed while I live, and returned to me any time I may wish it ; T. B. Worth.*"

On a subsequent visit he asked for the envelope, which she handed to him, and after retaining it about three hours, he returned it to her, still sealed and indorsed as before mentioned. She performed no other services for him than those before stated.

The plaintiff was not informed, nor did she know what the envelope contained, until she opened it after her brother's death. The testator, on the 6th day of July, 1867, executed his last will and testament, by which the defendants were appointed his executors; and he died in August, 1867. He left an aged mother, three brothers, and three sisters. His only descendant was a son about seven years of age, still living. He left an estate valued at $70,000, after paying his debts. He made bequests in favor of his mother and each of his brothers and sisters; and he directed the invest-

ment of $1,000, the income of which to be applied to the use of the plaintiff while she should remain single.

After his death, and not before, she opened the envelope and found in it a note in his handwriting, and signed by him, in the following words:

"ADDISON, *January* 30*th*, 1864.

"I promise to pay my sister, Mary C. Worth, on demand, ten thousand dollars, in consideration of services rendered to me.                    T. B. WORTH."

The note had affixed to it five one dollar revenue stamps. On the trial, it was agreed by the counsel for both parties that the action shall be decided according to the proofs, so that the plaintiff might recover from the defendant, if at all, any sum which the evidence and the law applicable to it would warrant.

The referee decided that the note was invalid, and that the plaintiff was not entitled to recover upon it; but he allowed and reported in her favor the sum of $1,000 with interest from his death for her care of him while he was sick, together with her costs, and reported that she was not entitled to anything more except under the bequest in the will.

The plaintiff moved at Special Term to set aside the report, and the defendants at the same time moved for its confirmation. The court denied the motion of the plaintiff and confirmed the report, and judgment was entered for the plaintiff accordingly. From that judgment the plaintiff appealed to the General Term, which reversed the judgment and ordered a new trial, and the defendants appealed to this court, and assented that, if the order of the General Term should be affirmed, judgment absolute should be rendered for the plaintiff.

*William Wickham,* for the appellant.

*George T. Spencer,* for the respondent, on the question of consideration, cited *Baker* v. *Walker* (14 Mees & Wels.

465); 1 Pars. on Cont., 361; 2 Pars. on Bills, 524; *Johnson* v. *Titus* (2 Hill, 606); *Oakley* v. *Boorman* (21 Wend., 588); *Robinson* v. *Raynor* (28 N. Y., 494); *Parrish* v. *Stone* (14 Pick., 198, 207); *Bucklin* v. *Bucklin* (1 Keyes, 141); *Freeman* v. *Freeman* (51 Barb., 306); *Lobdell* v. *Lobdell* (36 N. Y., 327); 1 Domat, Cushing's ed., p. 401; *St. Mary's Church* v. *Cagger* (6 Barb., 876); 1 Green. Ev., § 189. That there was sufficient and valid delivery, he cited *Marvin* v. *McCullum* (20 John., 288); *Lansing* v. *Gaine* (2 John., 300); *Powell* v. *Waters* (8 Cow., 669, 687); 1 Pars. on Bills, 49, 51; 2 Pars., 542; *Richardson* v. *Martyr* (30 Eng. L. and Eq., 365); *Seymour* v. *Cowing* (2 Keyes, 535); *People* v. *Bostwick* (32 N. Y., 446); *Champney* v. *Blanchard* (39 N. Y., 111); *Allen* v. *Cowan* (23 N. Y., 502). That delivery was not invalid for want of acceptance, he cited *Marvin* v. *McCullum, supra; Cole* v. *Sackett* (1 Hill, 516); *Hill* v. *Beebe* (3 Kern., 562); *Hutchinson* v. *Market Bank* (48 Barb., 302); *Lockwood* v. *Thorn* (1 Kern., 170); *Allerton* v. *Lang* (10 Bosw., 362); *Hunter* v. *Hunter* (19 Barb., 631); *Grangiac* v. *Arden* (10 John., 293); *Penfield* v. *Pub. Adm'r* (2 E. D. Smith, 305); *Marsh* v. *Foster* (18 N. H., 360); *Cooper* v. *Been* (45 Barb., 9); *Notbeck* v. *Wilks* (4 Abb., 315); *Toohy* v. *Dibble* (2 Hill, 641); *Ruggles* v. *Lawson* (13 John., 285); *Goodell* v. *Pierce* (2 Hill, 659); *Fulton* v. *Fulton* (48 Barb., 581); *Losee* v. *Losee* (2 Hill, 604); *Mactier* v. *Firth* (6 Wend., 103); *Taylor* v. *Mer. Life Ins. Co.* (9 How. U. S., 390); *Triver* v. *Wood* (30 N. Y., 307); *Van Buskirk* v. *Warner* (2 Keyes, 126). That power of recall did not invalidate the delivery, he cited *Tucker* v. *Wilson* (P. Williams, 261); *Bergan* v. *Bennett* (1 Caines Cas., 1); *Hutchins* v. *Hibbard* (34 N. Y., 24); *Knapp* v. *Alvord* (10 Paige, 206).

FOSTER, J. The will of Theron B. Worth was given in evidence before the referee, and it contained various devises and bequests which I have not set forth specifically; but in the view which I take of the case, I deem them to be entirely immaterial.

The transfer of the note from the testator to the plaintiff was not in the nature of a gift *causa mortis*; for independent of its being founded upon *some* consideration, the testator, when he executed it, was not the subject of any physical malady which would be likely to end in his death, or from which he had any apprehension that his death would ensue. Neither was it an absolute gift, *inter vivos,* because there was *some* consideration for it, and because also the delivery of it was a conditional one. It was subject to revocation by the maker at any time during his life ; and it was also subject to the further condition, that the plaintiff should not open the envelope in which it was delivered to her until after his death. It was not intended by the maker as a testamentary bequest; for long after its original delivery to the plaintiff, and after he had subsequently had it in his possession, and returned it to her, in the will which he made, he bequeathed to her the use (while she remained single) of $1,000, without any intimation that it was in lieu of the note ; and without any reference to it, and without any attempt on his part then, or thereafter, to reclaim it from her possession. It was, therefore, manifestly his *intent,* that the note should be hers as well as the bequest.

A deed executed and delivered by a grantor, which is to take effect so as to pass the title at his death, is not in any sense a testamentary disposition of the property described in it ; nor is a note, executed and delivered, and accepted, in the lifetime of the maker, but made payable at, or after his death, such a disposition of it; but in both cases, the instrument is absolute, and passes the right to the land, in the one case, and to the money in the other, to vest in possession or action at the death of the grantor or maker. And, if the note in question was delivered and accepted, the transaction is no more testamentary, than in the cases of the deed and note referred to ; and the only difference is, that in those, the delivery passed the right without power of revocation and without condition ; while in this, the power of revocation and

the condition continued till his death.    I think there are but two questions in the case.

The *first* is, whether the delivery, in the manner and with the conditions specified, and under all the circumstances of the case, was such, that if the note was founded upon a sufficient valuable consideration, it would on his death constitute a valid and legal claim against his estate ; and if so, then, *second*, was there such a consideration expressed, and proved by parol, as would make the note a valid demand, if the delivery had been absolute and unconditional.

I think the circumstances show that the maker of the note delivered it to her with the intention that it should be hers absolutely, unless he should thereafter apply to her for its redelivery, or unless she should open the envelope during his life.    Or, in other words, that he intended to pass the title in it to her, subject to being devested (as she had the possession) by either of those acts ; and that, if neither of them were performed, the title to the note should remain in her. It was not delivered to her as an *escrow*, for *such* a delivery must be made to some third person ; and, as a general rule, an *escrow* is made to await some affirmative action on the part of the other party, before he is entitled to the absolute delivery of the instrument, and not the affirmative action of the party who delivers it as an *escrow*.    The delivery, therefore, was complete, provided there was an acceptance by her.

There is no doubt, that a delivery of a deed or note, or other obligation, to one person in favor of, and for the benefit of another, constitutes a valid and binding delivery as against the party who delivers it, whether the party in whose favor it is delivered is owner of it or not ; and for the purpose of protecting his interests, the law holds the party receiving the delivery as his trustee, and makes his acceptance of it the acceptance of the beneficiary.    And this, too, whether the person receiving the delivery knows the contents of the instrument or, not, and whether he does anything more than merely receive it or not.    And yet, where the person, in whose favor the instrument is executed will be injured by the accep-

tance of it, the delivery to such third person does not bind *him*, unless he authorized such acceptance or adopts it by some subsequent act.

The same is the case with an instrument executed and delivered personally to an idiot or lunatic. If beneficial to him, the party executing it is bound by it, and the idiot or lunatic is entitled to its benefits ; but if against his interests, he is not bound, although he has received the delivery. In these cases, the delivery is held good, though the grantee or obligee really had nothing to do with the transaction, in order to carry out the intent of the party who executed the instrument, and for the benefit of the party for whose benefit it was delivered, and constitutes an acceptance on his part, when for his interest to do so, and not when otherwise.

Upon what principle is it, then, that a direct delivery of an obligation to the obligee himself, and a reception thereof by him, does not constitute an acceptance, if the contents of the instrument delivered are not at the time known to him ?

And why may not a party deliver an instrument, the contents of which are not known to the party receiving it, with the like effect as if it were, without his knowledge, delivered for his benefit to some third person for him ?

Or, suppose that on the 30th day of January, 1864, Theron B. Worth had been indebted to the plaintiff in the exact sum of $10,000 ; and had on that day delivered the note in question precisely as he did ; and it had remained in the possession of the plaintiff as it did, till his death, is it possible that the plaintiff could not maintain an action on the *note*, and that she would have been compelled to count on the original indebtedness? To my mind, the delivery and acceptance were more complete than in any of the other cases to which I have alluded. The delivery was to the party to be benefited ; and from what appears it is manifest, that when she received it, she considered it to be something which was of value to her. He had told her that he would pay her well for the services performed for him, and had offered to buy her a house and lot in compensation ; and when she received

it, on the day when he left her to return to his home, she could not doubt that it contained the compensation, or the evidence of it, which he had promised to make to her; and no doubt she gladly accepted it as such, in the full belief that it contained a generous compensation.

As nothing happened subsequently to the delivery which would invalidate the note, the next question is, were the conditions such as to render it therefor void *per se.*

By the terms of the delivery, it was intended to be valid, if neither of two affirmative acts were afterward done. It is clear that neither of these acts were performed, and in my judgment the delivery and acceptance were sufficient, and the note, as such, remained valid in the hands of the plaintiff, provided it was executed for a good consideration.

To support a note, or other contract, it is not necessary that the consideration therefor, shall be equal in pecuniary value to the amount of the obligation incurred by the note or contract. It is enough, generally, that no part of the consideration, upon which it was founded, was wanting at the time the obligation was incurred, and that no part of it has subsequently failed. And, as to all considerations founded upon specific articles of property, parted with by the obligee to the obligor, and which have not a specific, fixed, and certain pecuniary value, the court, upon the question of consideration, will not inquire into their actual pecuniary value, but will leave the parties to such estimates thereof as they have formed in making their contract.

If one voluntarily and fairly purchases either real or personal property of another, at a fixed price, and executes his note for the payment of the purchase money, he will not be allowed, when sued thereon, to prove, for the purpose of defeating, or reducing the amount of the recovery on the note, that the property in fact was not worth one-half, or one-quarter, or even one-tenth, of the amount at which he purchased it.

If one contracts with another, that he shall walk from Albany to Niagara Falls, or for any other service to be per-

formed by him, and agrees to pay him therefor the sum of $1,000, if the service is performed, he will not be allowed to interpose as a defence, if sued upon the contract, either that the service was not pecuniarily worth that sum to the party for whom it was performed, or that *he* received no actual benefit from such performance by the other party.

So, too, while the payment of a less amount, in money, for a larger debt which is due, and the taking a receipt therefor from the creditor, expressing that it is in full payment, does not amount to an accord and satisfaction, yet the acceptance of an article, or articles of property, and receipting them as in full, does amount to an accord and satisfaction, though their actual value is far less than the debt upon which they are received. These principles are elementary and familiar.

The note contains the declaration of the testator, that his agreement to pay her the $10,000 was in consideration of services rendered to him. He was very sick; but precisely how sick he was, or how dangerous his disease was, we do not know. We do know that he received a great deal of care and attention; and that she bestowed it upon him; and that, while she was bestowing such care and attention upon him, he frequently said he would pay her well for her services. It may well be that his life was considered in danger, and that he desired to stimulate her efforts in his behalf by means of pecuniary considerations, even beyond those which, as his sister, he could expect from her. And he may well, at that time, have estimated her services and attention as worth more to him than $10,000. "For all that a man hath, will he give for his life." At all events, it is clear that she was unremitting in her attentions to him, and he recovered. And if the note speaks truly, he then considered those attentions worth $10,000 to him. It is true, that in the manner of delivering it to her, he reserved the *locus penitentiæ*, in case he should afterward consider her services of less value to him; but he lived more than three years after that; and if his acts during that time are evidence of his opinion, he con-

tinued to believe, to the end of his life, that in giving the note for that consideration he had not committed a mistake. He chose, for these services, to execute the note. We have no pecuniary standard by which we can measure, or weigh their value to him. He estimated them then, and continued to do so, at $10,000, and those who stand in his shoes have no right to repudiate the contract which he made.

I think the note was executed for a valuable consideration, and that it is valid against his executors.

The order of the General Term should be affirmed, and final judgment should be ordered for the plaintiff for the full amount specified in the note, with interest thereon, from the 15th day of October, 1867 (when the claim of the plaintiff was made upon the defendant), together with her costs of the action to be paid out of the estate of the deceased.

LOTT, J. It appears by the findings of the referee that the sealed envelope, in which the instrument on which the plaintiff's claim was based (and which will for convenience be called a note) was inclosed, was delivered by the testator to the plaintiff without any instruction to her or any other person as to its disposition, except what is to be inferred from the indorsement thereon of the words "Mary C. Worth. This is not to be unsealed while I live, and returned to me any time I may wish it. T. B. Worth;" and that she had no knowledge or information of what it contained, until she opened it after the death of the testator. That indorsement clearly indicated that he intended to exercise a control over it during his lifetime; and the plaintiff, by its acceptance in that form, assented to hold it subject to such control. She, therefore, was merely the depositary or custodian thereof while he lived. The indorsement of her name and the subsequent direction implied that, if she continued to hold it at the time of his decease, she would then be authorized to break the seal and hold the note inclosed therein absolutely as her property.

All the facts and circumstances clearly show that the testa-

tor did not contemplate that the note should be operative as a legal obligation during his lifetime, but should become effectual only on his death. These considerations show that the referee properly found, as a conclusion of law, that there was no valid delivery of the note in the lifetime of the testator, and that no one could legally deliver it to her as a valid note after his decease. Being ineffectual for want of such delivery, as a note or a legal obligation to pay the amount specified therein, no recovery could be had thereon as such. Nor could it be used as a settlement or agreement between the plaintiff and testator of the value of the services rendered. The fact that it was not delivered to the plaintiff and that its contents were never known or communicated to her, precluded the idea of such settlement or agreement, and as it was never given to or left with any one for her, it was incapable of acceptance by her.

I think, however, that the referee erred in deciding that the testator intended that the money mentioned in the note might be paid to the plaintiff after his decease by his representatives " *as a gift*" from him to her.

On the contrary, the nature of the transaction shows that he meant it as a liberal compensation " for *services rendered*" to him, and *not* as a *mere gratuity*. The oral evidence and the note itself clearly indicate, and the finding of the referee establishes the fact, that valuable services had been rendered to him. There is consequently no ground for holding that the sum specified was intended as a gift. The note, however, although not available as a legal obligation for the payment of that sum, was competent as, *evidence* of the *value* of those services. It shows, or at least tends to show, what the testator's estimate of their value was, and is, therefore, very material in determining the amount to which the plaintiff was entitled. This erroneous finding, affecting its legal result, the final decision made by him, made it proper to reverse the judgment founded on that decision.

It follows that the order for a new trial made by the General Term must be affirmed with costs, and judgment absolute

with costs against the defendants must, under the stipulation, be entered.

EARL, Ch. J., HUNT, SMITH and INGALLS, JJ., were for affirmance and judgment absolute for the plaintiff, concurring with FOSTER, J.

GROVER and SUTHERLAND, JJ., were for reversal.

Judgment affirmed and judgment absolute ordered for the plaintiff.