ACTION of debt and declaration in the usual form on a single bill which was as follows:
 $1000. WILMINGTON, DELAWARE.
Six months after my death I do order and direct my administrator to pay Mary F. Kirkpatrick, or order, one thousand dollars, without defalcation for value received.
Witness my hand and seal this twenty-eighth day of May, A.D., 1873.
 MARTHA KIRKPATRICK. [SEAL]
Witnesses present,
 WM. H. GRUBB, L. P. BUSH.
And to which the following special plea was the only plea entered:
And the said defendant in his own proper person comes and defends the wrong and injury, when etc., and says, that before and at the time of the alleged making of the said several supposed instruments of writing mentioned and declared on in the said several counts of the said plaintiff's declaration, the said Martha Kirkpatrick, the testatrix deceased, was the owner of real and personal property, in easy pecuniary circumstances, personally of a delicate organization, of a strongly nervous temperament, *Page 570 
and resided in the city of Wilmington in the county of New Castle.
That for several years prior to her decease she was anxious to make a testamentary disposition of her property, real and personal, and on divers occasions consulted her friends and acquaintances with that view, but as often, when advised as to the formal and best way of doing so, shrunk from so doing, by reason of an inherent or acquired timidity and superstitious notion avowed by her that she did not like to do so by reason of such timid and superstitious feeling, and because it would seem as if she were going to die soon; but that if the same end could be attained without the full and formal expression of it by a formally drawn and executed "last will and testament" so as to dispose of the bulk of her property amongst certain preferred relatives and beneficiaries after her death, she would do so. By the advice of one or two of her friends, in pursuance of said purpose, she, at various times prior to the 7th day of March, A.D., 1879, caused to have drawn and executed paper writings of a testamentary character and with a testamentary purpose, all similar to and, except as to date of making, persons and amounts designated, substantially the same in form as the said instruments of writing declared on in the several counts of the declaration and purporting to be set forth by the copy filed therewith in this case: that is to say, prior to her, the said Martha's death (which took place on or about September 2, 1880), to wit, on the 28th day of May, A. D., 1873, she made and delivered to one Margaretta Hewes, a paper writing of like tenor and purport for five hundred dollars, and on the 28th day of May, 1873, as alleged, to Mary F. Kirkpatrick, the plaintiff in this action, a paper writing of like tenor and purport for one thousand dollars.
On the 3d day of May, 1876, to one Sallie A Williams, a paper writing of like tenor and purport for five hundred dollars.
On the 28th day of May, 1873, to Mrs. Ann Kirkpatrick, a like paper writing for one thousand dollars.
On the 28th day of May, 1873, to Mrs. Ursula Lex, a paper writing of like tenor and purport for one thousand dollars. *Page 571 
On the 28th day of May, 1873, to Martha M. Kirkpatrick, a paper writing of like tenor and purport for one thousand dollars.
That on the 29th day of August, A.D., 1876, she sent for John C. Patterson, Esq., a practicing attorney of this court, and for the same reasons hereinbefore assigned by her for not having a formal and full testamentary document drawn and executed, caused to be drawn by him and thereupon executed and deposited with him in trust to be delivered to the parties respectively named therein, after her death, unless meanwhile superseded or revoked by her, several paper writings of the purport, dates and amounts hereinafter mentioned, that is to say,
One under her hand and seal, before two attesting witnesses bearing date, August 29th, 1876, whereby she, six months after her death, directed and ordered her administrator to pay to Mrs. Arm Kirkpatrick (widow) five hundred dollars without defalcation for value received; to be paid to her individually, irrespective of any husband she might have.
Another of like date, under her hand and seal attested in like manner, in like terms and provisions in favor of Mrs. Emma Hutchinson, for three thousand dollars.
Another of like date, under her hand and seal attested in like manner, in like terms and provision in favor of Mrs. Ursula Lex, for three thousand dollars.
Another of similar tenor and terms, executed and attested in like manner, in favor of her niece, Martha M. Kirkpatrick, for three thousand dollars.
And two others, of like tenor and date and executed and attested in like manner, for amounts not now recalled, one in favor of Miss Sallie Williams and the other in favor of her niece, Mary F. Kirkpatrick (being the same persons hereinbefore referred to by the names of Sallie A. Williams and Mary F. Kirkpatrick), both of which she subsequently revoked and recalled, and substituted in place of the former one in like terms throughout, for three hundred dollars, and in lieu of the latter *Page 572 
one in like terms throughout (but in each case with different witnesses) for five hundred dollars, the substitution of the latter being made on the 13th day of December, 1877, that of the former on the 21st day of February, 1879.
This defendant further averring, saith that meanwhile on several occasions, the said Martha Kirkpatrick, in her lifetime, wishing to dispose after her death of various articles of furniture, pictures and ornaments belonging to her, by bequest, to different persons, without drawing and executing a formal testamentary instrument to that effect, consulted counsel to that end, but for the same superstitious reasons hereinbefore stated as assigned by her on every such occasion, declined acting upon his suggestions and advice, until on the 7th day of March, 1879, having on that day sent for and conferred with counsel in regard to the disposal of certain household effects and ornaments without the execution of a formal will and testament, in some manner analogous to the manner already adopted by her in regard to the money bequests hereinbefore referred to; under his remonstrances and advice she finally consented to have her desires formally expressed and formulated, and having then and there furnished a draft of her testamentary purposes, those purposes were thereupon drawn out in form, submitted to and the paper writing containing them finally and formerly executed by her, as being and containing her only last will and testament; which testament and last will is in form following, that is to say,
I, Martha Kirkpatrick, of the city of Wilmington, county of New Castle and State of Delaware, single woman, being desirous whilst capable of so doing, of disposing of my worldly estate, do make this my last will and testament, and dispose thereof as follows, viz.:
First. The large hair-cloth rocking chair in the parlow of my house, I give to Edward Kirkpatrick; also to him the eight-day clock on the stairs, and the engrossed resolutions of Hanover Street Church.
Second. To Emma Hutchinson I give father's portrait, the picture of Washington in the parlor, and the large easy chair in the second-story front room. *Page 573 
 Third. To Ursula Lex the picture called "Innocence," and the picture of sister Mary and Frank.
Fourth. To my three nieces, Ursula Lex, Emma Hutchinson and Martha Kirkpatrick, to be equally divided among them by my executor, except one piece for Aunt Ann Kirkpatrick, and one for her daughter Mary Kirkpatrick, all my solid silver. Fifth. The presents received by me from my nephews and nieces, I desire to have returned to them respectively from whom they were received, in case they will take them; if not, they may pass as a part of the residue of my estate.
Sixth. To Maggie Higgins I give from my furniture not mentioned in any of the preceding bequests, to be selected by her or by my executor, enough to furnish one room.
Seventh. To Ellen Higgins the furnishing of one room from the residue of my furniture, to be selected as above.
Eighth. To Maggie Johnson (of St. George's), from the residue of my furniture, to be selected as above, the furnishing of one room, together with three pictures in the room over the dining-room.
Ninth. In preference to the bequests mentioned in theSixth, Seventh and Eighth items preceding, I give additionally to my nieces, Ursula Lex and Emma Hutchinson, each, one fancy chair in the parlor.
Tenth. To my nephew, James Kirkpatrick, I give the portrait of my brother James, in the parlor, unless he already has one, in which case it may be given to Rowland Kirkpatrick.
Eleventh. In addition to the bequests already above made, I direct my executor to pay to Mrs. Ann Kirkpatrick, to be paid to her irrespective of any husband she may have, five hiundred dollars ($500.00). To my niece, Mary F. Kirkpatrick, In like manner, five hundred dollars ($500.00). To Sallie Wiliams, in like manner, three hundred dollars ($300.00.) To my niece, Martha M. Kirkpatrick, in like manner, three thousand dollars ($3000.00). To Ursula Lex, in like manner, three thousand dollars ($3000.00), and to Emma Hutchinson, in like manner, three thousand dollars ($3000.00).
Twelfth. To the Home for Aged Women, a corporation of *Page 574 
the State of Delaware, I give for the purposes of said institution three hundred dollars ($300.00).
Thirteenth. To the Trustees of the Home for Friendless and Destitute Children in the City of Wilmington, a corporation of the State of Delaware, for the purposes of said incorporation, I give two hundred dollars ($200.00).
Fourteenth. My dwelling-house, No. 610 King Street, in the city of Wilmington, and all other real estate which I may own at the time of my death, I direct my executor to sell at public sale for the best price to be had therefor, and to make and deliver to the purchaser or purchasers a good and sufficient deed or deeds therefor in fee simple; the purchase money to go into and be treated as a part of my personal estate.
Fifteenth. All the rest, residue and remainder of my property and estate, of whatever kind and wheresoever situate, I desire to be equally divided among my nephews and nieces (except my nephew Thomas, Son of John), or their representives; the issue of any dying before me and leaving issue to stand in the place or stead of its parent. From the benefit of this item I except my nephew Thomas, not out of any unkindness towards him, but simply because his circumstances are such as to place him beyond any need of it.
Sixteenth. I nominate my trusty friend, William M. Pyle, to be the executor of this my last will and testament, and set my hand and seal hereto this 7th day of March, A. D. 1879.
 MARTHA KIRKPATRICK.
Signed, sealed, published and declared by Martha Kirkpatrick, the testatrix, as and for her testament and last will, in our presence, who, in her presence, at her request and in the presence of each other, have hereto set our hands as witnesses this 7th day of March, A.D. 1879.
 ISAIAH K. THOMAS, J. M. OCHELTREE.
And the defendant further saith that the said Martha Kirkpatrick died on the 2d day of September. A.D. 1880, and that *Page 575 
since her death the said hereinbefore last mentioned paper writing, purporting to be and being the testament and last will of the said Martha Kirkpatrick, deceased, has been duly proved before the register of the county of New Castle, in which the testator resided at the time of her death, and has been duly allowed and recorded in the register's office, and letters testamentary granted to this defendant, the executor thereof; and that the same remain unrepealed and in full force and effect.
The defendant further saith, that at the time of the making of the said several alleged instruments of writing in the declaration mentioned, to wit, on the 28th day of May, A.D. 18713, the said Martha Kirkpatrick was not, in fact, indebted and liabe, to the said plaintiff in the said several sums of money in the said declaration mentioned, or any of them or any part thereof, and did not make or cause the said alleged instruments of writing, or any of them, to be made in payment of, or to secure the payment of, any subsisting liability or indebtedness on her part, but made the same simply as a gratuity and bequest out of her bounty of the said several sums of money mentioned in the said instruments of writing, to be paid after her death by her personal representatives, out of such personal estate as she might leave applicable thereto, and the same was, in fact, simply a testamentary disposition of so much of any personal estate she might leave, in the nature of a last will and testament; to operate and take effect only after her death. Nevertheless, the defendant saith that the same have not as yet been proved and allowed before the register of the county in which the testatrix resided at the time of her death, to wit, New Castle County aforesaid; then to be proved, established and allowed or disallowed like any other testamentary provision, as by law prescribed. Wherefore the defendant saith, that this court ought not to have or take further cognizance of the action aforesaid, because he saith, that the said supposed causes of action, and each and every of them (if any such have accrued to the said plaintiff), purport to be and are only testamentary dispositions of the property and estate of the said testatrix, Martha Kirkpatrick, in the nature of a last will and testament, purporting and intending to operate and take *Page 576 
effect only from and after her death, are not within the original cognizance and jurisdiction of this court, but are cognizable and can be proved and allowed, in the first instance, only before the register of the county in which the said Martha Kirkpatrick resided at the time of her death, to wit, of New Castle County aforesaid.
And the defendant further saith, that this court ought not to have or take further cognizance of the action aforesaid, because he saith that the said supposed causes of action, and each and every of them (if any such have accrued to the said plaintiff) accrued to the said plaintiff, to be had and maintained before another tribunal and jurisdiction other than this court, to wit, before the register of the county of New Castle, and the said instruments of writing in the said plaintiff's declaration mentioned ought to be exhibited, proved and pleaded before the said register of the county of New Castle, wherein resided the testatrix at the time of her death, to whom, under the laws of Delaware, the jurisdiction and cognizance of such matters belong, and not before this court, which has by law no original cognizance and jurisdiction thereof.
And this the said defendant is ready to verify; wherefore he prays judgment whether this court can or will take further cognizance of the action aforesaid.
Nields for the plaintiff. The plea was to the jurisdiction of the court, and against it he cited 12 Mass., 366; Gould's PL, 222, 223. Under the plea of non est factum, the general issue in this action, the defendant cannot put in evidence the matters specially to the jurisdiction, nor under any other that can be pleaded. But a court never will construe an instrument in writing to be a will if it can be construed to be a contract. By the terms of this instrument it was certainly payable six months after the death of the drawer of it, and by a person certain her administrator, and to a person certain the payee or his order, without defalcation for value received. And that made it both in form and effect with its delivery to the payee by her order soon afterwards, a good and valid bill of exchange. It was also *Page 577 
irrevocable by the maker of it. 2 Edward's Chancery, 341. Analogous to the case before the court. 42 N. Y. 362, 2; 7 Pa., 119; 68 Pa., 231; 18 E. C. L. Rep., 61; 11 Wend., 137; 15 Wend., 501; 14 Pick., 198; 4 Harr. 330; 5 Harr., 351; 2 Houst., 571; 1 Harr., 22; 1 Houst., 347; 3 Houst., 288; 4 Houst., 241; 1 Ld. Ca. in Equity, Part 1, 180; (Dawson v. Pearton) Leake on Con., 609; 2 Wms. on Exrs., 740; 3 Pr. Wms., 222; 7 T. R., 471.
Patterson for the defendant. A seal does not always import a deed, and may sometimes be but surplusage. O'Harra on Wills, 4; 2 Pars. on Con., 721; 3 Pars. on Con., 356. So in case of voluntary instruments. 1 Ch. PL, 356. A sealed will or award has not the character of a deed. 1 Wms. Exrs., 9; 4 Harr., 7; 2 Houst., 246; 1 Wms. on Exrs., 58, 261; 1 En. Eccl. Rep., 77; 4 Vez., 199. Parol evidence is inadmissible to show the intention in order to determine whether it is a will or not. 4 Vez. Ir., 186; 1 En. Eccl. Rep. 286, 290, 404; Wigr. on Wills, 273, 282; 8 Cow., 246; 1 Jarm. on Wills, §§ 11 to 23; 1 Phil. on Ev., 562; 3 Phil. on Ev., 1360, 1476, 1788. 2 Harr., 457; 5 Harr., 460; Steph. on Ev., 18; 1 Houst., 44. There is a distinction between a personal undertaking and a direction to another person, per Ld. Mansfield. 1 Burr., 227; 2 Bl. Com., 240.
Whitely on the same side. It is not a note, it is not a single bill, it is not a bond; it is merely a direction to pay. 4 Kent's Com., 452, 3; 51 Pa., 126.
Nields, in reply, cited 1 Wms. on Exrs., 58.
The Court,
The question whether the paper, upon which the action in this case is founded, is the proper subject of a suit, has been fully and forcibly presented by the counsel on both sides, and is one of much importance.
The paper in controversy bears date the 28th day of May, *Page 578 
1873, and the maker of it did not die until September 2, 1880. There is no question of the due execution of the instrument, nor any that simultaneously therewith it was delivered to the plaintiff. Its form is as follows:
 $1000 WILMINGTON, DELAWARE.
Six months after my death I do order and direct my administrator to pay Mary F. Kirkpatrick, or order, one thousand dollars without defalcation for value received.
Witness my hand and seal this twenty-eighth day of May, A. D., 1873.
 (Signed) MARTHA KIRKPATRICK. [SEAL]
 Witnesses present,
 WM. H. GRUBB, L. P. BUSH.
The defendant has filed a single plea to the declaration setting forth a certain state of facts from which, he alleges, an inference is required that the paper in question is testamentary, and not an instrument for the payment of money; and if it be testamentary, this court has no jurisdiction to entertain a suit upon it. It is meant to be a plea to the jurisdiction, and we treat it as such. The defendant traverses the facts of the plea by his slum pleading, and issue is made between the parties. By arrangement between the counsel, it is agreed that the court shall first determine for itself whether there is ground for the defendant's plea; and it will be asked, in case there appears to be such prima facie, to submit the case to a jury, that the facts alleged may be inquired of and passed upon as in other cases. We approve of this arrangement, though without meaning to give any opinion upon what our judgment would be, in case they should be found by a jury to be as averred in the plea. The submission of them to the jury and their affirmative finding would be not to decide the question of jurisdiction, but to render certain the matter of the plea, leaving to the court to determine the ultimate question.
What is the nature and character of the instrument sued upon? *Page 579 
Does it express a sense of pecuniary liability by the defendant's testator to the plaintiff, or is it a testamentary paper only? The defendant takes the latter view of it; but the plaintiff asserts it to be an instrument, the delivery of which to him by the deceased, imposed upon her a legal liability which he can enforce by this action. The question for us to decide is this: Does this paper import by its terms liability on the part of the testatrix to the plaintiff for money, or a state of indebtedness by her to the plaintiff which prompted the making of the instrument and its delivery? If it does, the defendant admits there is no ground for his contention. But if not, then he insists that it is a mere direction to her prospective representative to pay money, which makes it testamentary. It is not disputed that the test of its testamentary character is its revocability by the testatrix, which is the rule with respect to all provisions in wills. A single question is all we have to deal with.
It is undoubtedly true, generally, that all verbal contracts and all parol writings, are void unless they are founded on a valid consideration. Without it they are naked contracts. In fact. no instruments imposing pecuniary obligation are valid without consideration. But some of them are so constructed as to import in law such consideration without any being expressed. These are commercial instruments, commonly called commercial paper, and writings or instruments under seal. For reasons, at one time (when most men could not write and the only mode of giving their assent to a writing was by affixing to it their individual seal with its own device), great solemnity and importance were thrown about the act of impressing the wax with the maker's seal; and because of such he was not allowed to dispute the validity of the instrument, by averring that there was no consideration for it. It was taken, conclusively, as his deliberate, well-considered act, and to be binding upon him. Nothing but fraud practiced upon him when he made it, or duress, or something that showed it was not, in reality, his act and deed, could be set up against its validity. Such is the law still; and it is also the law, and has always been so, that no parol proof will be heard to alter, explain, add to, or take from any of its terms. To *Page 580 
allow this would be to destroy its value as a certain, definite expression of the maker's purpose in executing it, and introduce uncertainty, confusion and doubt created by verbal testimony. And while this is true, it is none the less true that whatever is expressly stated in the instrument or necessarily results from what is stated, the party making it is estopped to deny — the law refusing to hear any averment or proof against his solemn declaration under his seal.
The learned counsel for the defendant do not attempt to deny the law as stated; but they contend that the sanctity of a seal docs not attach to the paper before us, although in point of fact one appears opposite the maker's name. They contend that this is in form virtually an inland bill of exchange, or that it is a sort of draft, or order, upon a then non-existing person and who never has yet existed, for the payment of a sum of money; and that upon the expiration of six months after the maker's death. They construe it to be at the utmost, if anything, only a legacy to the plaintiff, subject to the power of revocation. They contend, and cite abundant authority for doing so, that what in reality is a mere testamentary paper, cannot claim any better quality, simply because of its mere form. This is undoubtedly true. They also claim that the bare fact that the gift of a legacy is made under the form of a sealed paper does not impart to it any greater consequence than an unsealed paper would — that is, does not impress it with the value of being what is called a purchased legacy, making the legatee a purchaser and causing him to have preference in the administration of an estate over all legatees who are mere volunteers; nor, they contend, can it be received in any light which will withdraw it from the ordinary case of a simple legacy, given by a separate but valid instrument, to be proved, approved and allowed in this State by our judge of probate, the register, as any other testament. They insist upon it that this quality of legacy appears sufficiently upon the very face of the paper; but, if not thus considered, yet the form of the paper taken in connection with the period when the money mentioned in it is to be paid, creates a doubt or is sufficient to raise one about, what it really is; and that the method of solving such *Page 581 
doubt, so as to determine whether this court will take cognizance of the case or not, is by an issue to be tried by a jury at the bar of the court.
The counsel for the plaintiff contend that here is no case of a legacy, but one of the creation of a debt, to be discharged like any other debt; and they insist that to allow proof to be offered that it is a legacy, would be to upset those certain and well-established rules of evidence before noticed against interfering with the terms of a written paper. While admitting this, it at the same time is the constant course elsewhere with respect to disputes like the present (we have had none heretofore) that where there is in the mind of the court doubt about the intention of a testator with respect to a paper executed by him before his will, and having a form different from such an instrument, it will always submit the solution of such doubt to a jury in some appropriate form of issue. This is usually a question for a probate court, where it is the constant practice to send issues of this kind to a common law tribunal; but, as here now, it may be a question for a court of law to decide, whether a paper on which suit is brought, is congnizable at law or is a legacy, to be first probated as other wills. In case of doubt, then, it will not take cognizance without the finding of a jury upon the question of a testator's intention — one of fact simply.
If we were to refuse to examine into a case where suit is brought against a decedent's estate upon a sealed instrument, and defence made that it is a legacy gift and not an obligation of indebtedness, simply because of the character of the instrument, we should strain the rule to an extent not done heretofore, and make it absurd to a degree that would reconcile the most conservative to its abandonment entirely. Wherever a case arises for inquiring into the true meaning of the act of a testator with respect to an instrument by him made, an enlightened court will resort to any means to ascertain such meaning consistent with such purpose, and the general rules and policy of the law. Although such instrument be a deed or bond in mere form, yet if, on the face of it, it appears to have been meant to be a legacy merely, it will be taken to be a legacy, and this court will not *Page 582 
allow it to be sued upon or rather, suit to be brought for such legacy, until regular proof of it as a testamentary paper has been made before the register and the paper admitted to probate. All this goes to support the defendant's contention in this case.
The defendant further contends, and supports his plea by authority which cannot be disputed, that where a testator has not, in a paper payable post mortem, recognized himself either by intendment, or language, as under legal indebtedness to the party in whose favor it is made, such instrument is without consideration, purely voluntary, and testamentary in its character; and this,' whatever form he may have given it. Testamentary, or not, is the only question in such cases. He insists that there is nothing, upon the face of the paper before us, to give it any quality withdrawing it from the rule I have stated, that a seal gives no vigor to a testamentary gift it would not have without it.
The plaintiff meets this plea however by calling our attention to the fact that, in addition to the circumstance that the paper is under seal, it contains the expression that it is made for "value received;" and he presses upon us the consideration that these words show indebtedness, responsibility, liability, of a pecuniary nature to the plaintiff by the testator. To rebut this argument. the defendant claims that we should treat that expression as words of mere form, because they are usually part of the language of drafts, or bills of exchange (to which they liken this paper), and which are good without them. They also suggest, that, in such papers, they mean value received by the drawees from the drawers, and refer to it. Such, however, is not the case; they express a consideration moving from the payees to the drawers of them, the acceptance of the drawers being an ad-mission that they have funds in hand of the drawers sufficient to meet them, and an undertaking to pay them. While we impute no great force to the paper in this case as a sealed instrument merely, to make it obligatory, and not testamentary, yet we cannot erase these words "value received" from it, any more than any other words in its for, looking at the paper alone, and *Page 583 
not searching elsewhere, for its meaning, they, clearly enough to our minds, show that the testatrix, when she made it, had in her mind a sense of obligation of indebtedness which she meant to satisfy, in the form of acknowledgement of liability to be discharged after her death. While if this were a parol instrument, without apparent consideration, we should refuse to entertain a suit with respect to it at all until it had undergone the appoval of the register; yet, being a sealed paper, expressing value received, and as we think, plainly by that language creating a legal liability though not to be discharged in the lifetime of the maker, we feel constrained to regard it like any debitum inpresents soluendum in futurio. The mere question of the form of the instrument in our opinion is not of much moment; the fact of acknowledgment of liability clothes it with the quality of any other acknowledgment under seal of indebtedness. There is consideration, then, for the paper, without the aid of the seal, and this being decided the executor is estopped in this court to deny it. As a party cannot aver against his own deed, so neither will his legal representative be allowed to do it.
There is really no conflict of authority upon the question with which we have been dealing; and, therefore, we should not have thought it necessary to review the cases cited by counsel even if had had time — which we certainly cannot have had. It is from no want of respect for their arguments; which were certainly as able as elaborate. In fact all the cases decided anywhere upon the point considered have been opened and submitted to us, with fine critical comments of great service in understanding them. None of them however presented by the defendent's counsel justify us, as we think, in holding this paper to be other than one intended to express legal liability on the part of its maker, and provide for its discharge. We therefore hold it to be, upon the face of it, a valid legal instrument to secure the payment of acknowledged indebtedness, and not a testamentray gift. If it had been a simple direction to pay, it would have been testamentary only; but the expression "value received," having a certain meaning in law, must be considered as doing for the instrument that which forbade us to treat it otherwise than as we have done. *Page 584 
There was a suggestion rather diffidently made — that though the instrument here contains the words "value received," yet that in fact it was but a mere voluntary paper, and therefore only to be treated as testamentary. In answer to it, a sufficient reply is, that voluntary bonds are good against the obligors, and everybody else but creditors, or those occupying a quasi relation of such.
Another point was made and much stress was laid upon it by the defendant's counsel that the paper here had no effect during the lifetime of the testatrix; but we do not view it in that light. Its obligatory character did not depend upon her death, but only provision for discharge of it.