Where a sister kept house for her brother and nursed him, that he paid her $4 a week regularly until his death raised the presumption that such payment was intended as her compensation for such services.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871, 1874, 1876; Dec. Dig. § 221.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the estate of William E. Trumble, deceased. Claim of Mary B. Draper. Dismissed.

Elias H. Foley (D. P. Morehouse, of counsel), for claimant.

Hiscock, Doheny, Williams & Cowie, for executor Trust & Deposit Company of Onondaga.

J. T. McCaffrey, for Lally.

McCartin & Alverson, for Reed and others.

B. Coe Turner, for Parkhurst and others.

L. C. Rowe, for Mosher and others.

MILLER, S.  William E. Trumble died in the city of Oswego, N. Y., on the 9th day of April, 1909, leaving a last will and testament which was admitted to probate; and letters testamentary issued to the Trust & Deposit Company of Onondaga on or about the 12th day of July, 1909.  Mary B. Draper presented to the executor a claim of $3,120 for services rendered by her to the testator as housekeeper and nurse from the 7th day of April, 1903, to the 9th day of April, 1909, a period of six years, at $10 per week; also a claim of $81.83 for household furniture alleged to have been sold by her to the testator. The claim was rejected by the executor, and a stipulation was filed providing for the determination of the claim by the surrogate on final accounting.  The claim for household furniture was not pressed upon the trial.

The decedent carried on a large grocery business in the city of Oswego for many years prior to his death, and left an estate worth between $30,000 and $40,000.  He was a widower, and his only heirs at law were six sisters and several nephews and nieces.  By the terms of his will one of these sisters was left the life use of a farm, and the balance of the estate was to be converted into cash; and the other five sisters, including the claimant, were each to receive the sum of $40 per month while they lived.  The clause of the will containing the provision for these five sisters was the cause of considerable litigation, but was finally construed by the Court of Appeals in Matter of Trumble, 199 N. Y. 454, 92 N. E. 1073 to mean that the said five sisters each had a legal vested life use in the sum of $40, payable each and every month during the lifetime of each sister, severally, and, subject to such legacies, the residue of the testator's property passed to the next of kin of the testator as provided by the decedent estate law.

In April, 1902, the claimant, who was a married woman, but not living with her husband, was about to come from Worcester, Mass., where she was residing, to the city of Oswego, for the purpose of keeping house for her son, Edwin B. Draper, a young man about 20 years of age, who was then employed by the testator in his grocery store.  Mr. Trumble was boarding with a woman by the name of Upson who was then ill; and, when he learned from Edwin that his mother, the claimant, was coming to Oswego to keep house for him, the testator stated to Edwin, "I want her to take care of Mrs. Upson while she lives, and, when she dies, I want her to keep house for me." Claimant did come to the Upson home, and remained there until April, 1903, when she and her son Edwin took up their residence with the

testator at a house he had recently purchased and repaired; and they remained there until the testator's death. Prior to going to the Trumble home, Edwin had received $12 per week and boarded himself; but, so far as the evidence shows, he continued receiving the same wages and paid nothing for his board except that he paid his mother $2 per week for spending money.

Under the evidence I am fully satisfied that the claimant was an efficient housekeeper and a kind, affectionate sister. The decedent was troubled with heart disease, and was apprehensive of being left alone; and as a result she was confined closely to the home during the six years she lived with him. It was admitted upon the trial by the claimant that she had received $4 per week from the decedent while she had lived with him.

The executor and the nephews and nieces who are interested in the residuary estate object to the claim upon the grounds: First, that, where services are rendered to a decedent by a near relative, there is a presumption arising from such relationship that the services were gratuitous, in the absence of satisfactory evidence of an agreement to compensate; second, the fact that the claimant received regularly $4 per week during employment of six years raises a presumption that such weekly payments were received as full compensation for the services rendered and that the burden is upon the claimant to show otherwise.

The claimant contends that the evidence given by her son of a conversation had with the decedent in April, 1902, when decedent stated to the son, "I want her (meaning claimant) to take care of Mrs. Upson while she lives and when she dies I want her to keep house for me," shows that the services were performed at the request of the testator, and that they were not performed gratuitously or merely for her board, but that she was to receive compensation. The claimant also contends that she has shown that the decedent appreciated the value of her services and expected to make liberal compensation by the testimony of several witnesses.

The witness Bradt called by the claimant testified:

"He [decedent] said he was going to make a home for himself, and have his sister Mate take care of it for him. I also heard him say he didn't know how he would keep house if it wasn't for his sister Mate."

Witness Daniels, testifying to a conversation had with decedent in regard to two houses that decedent owned, said:

"He told me he sold one for $5,000. The other he was going to give to Mate. He told me she had been a good sister to him and took care of him, and he calculated to give her that as a home."

Another witness testified that decedent said to her:

"I have bought a house for me and my sister, for she deserves a home, and it is to be hers."

Another witness testified:

"I said, 'How are you, Mr. Trumble?' and he said, 'Very bad;' and I said, 'Why don't you get your business in such shape that you could go away as you did once before?' He said, 'I want to build Mate a bungalow.' I said, 'I know she deserves it.' He said she would get it."

The claimant cites several cases to sustain her contention, including Worth v. Case, 42 N. Y. 362; Robinson v. Raynor, 28 N. Y. 494; Markey v. Brewster, 10 Hun, 16; Matter of Ryder, 13 N. Y. Supp. 542; Matter of Strickland, 10 Misc. Rep. 486, 32 N. Y. Supp. 171.

[1] I think, under the principles of law laid down in many of these decisions cited by claimant, a recovery could be sustained in this case; but since these cases were decided the courts have laid down some very stringent rules in reference to this class of cases, and much stronger proof is now required than when most of the cases cited by the claimant were decided. Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118; Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364; Butcher v. Geissenhainer, 125 App. Div. 272, 109 N. Y. Supp. 159; Dueser v. Meyer, 129 App. Div. 598, 114 N. Y. Supp. 64. Taking into consideration all the facts and circumstances connected with this case, I am strongly convinced that, under the recent decisions, the claimant has failed to overcome the presumption that the services were performed gratuitously. Conceding, however, that the claimant has overcome the presumption that the services were performed gratuitously, in so far as the relationship was concerned, I am of the opinion that she has not overcome the presumption that the receipt of $4 per week from the decedent during the entire period for which she claims was received as full compensation for the services rendered.

[2] There is nothing in the record concerning the weekly payments of $4, except the admission of the claimant that she had received from the decedent $4 each week and the evidence of one witness who testified that on one or two occasions she saw decedent hand claimant some money, and heard him remark that there was her wages. There is no evidence to overcome the presumption that this weekly payment of $4 constituted payment in full, except the evidence that has already been recited. Under the recent decisions, I think this falls far short of the proof required.

In the case of Rose v. Leask, 124 App. Div. 799, at page 803, 109 N. Y. Supp. 484, at page 488, in which regular payments were made for the services, the court says:

"The burden is, therefore, upon the party seeking to recover additional compensation of proving that there was an agreement that for the services rendered additional compensation should be paid, or that the obligation to the employé was not fully discharged by the payments made and accepted."

The court also says (124 App. Div. 802, 109 N. Y. Supp. 487):

"We have the bare fact that the plaintiff entered the employ of and rendered services to the decedent for seven years, and that during that period the decedent made her regular payments which she received and applied to her own use. There is certainly in this nothing to justify a finding that these payments were not intended by the decedent or accepted by the plaintiff in full satisfaction of her claim for services rendered, and the plaintiff does not claim that during that period there was any expression of dissatisfaction as to the amount of the payments to her or request for additional or greater compensation, * * * and there certainly arises under these circumstances a presumption that these regular payments were made and received as compensation for the services rendered."

In the case of Butcher v. Geissenhainer, 125 App. Div. 272, 109 N. Y. Supp. 159, the decedent had paid to the claimant during the last

few years of her alleged employment a certain sum per week for acting as housekeeper, and Judge Miller, writing for the court, says, concerning these payments:

"But a stronger circumstance still, and one which to my mind entirely discredits plaintiff's case, is the fact that in 1894 Isabelle (plaintiff) entered testator's employ at a regular salary. That contract of employment is irreconcilable with the contract to pay for those services by will."

In Matter of Lucas v. Boss, 110 App. Div. 220, 223, 97 N. Y. Supp. 112, 115, a niece sued for services performed for an uncle, and it appeared that she received some compensation from time to time. Judge Ingraham, writing for the court, says:

"There is no direct evidence of any promise of defendants' testator to pay for the services that the plaintiff rendered, nor could a promise to pay be implied from the mere rendition of services of a greater amount than the person rendering the services received when it was rendered."

It must be conceded that there is some evidence tending to establish this claim, and, perhaps, in an ordinary case, sufficient to sustain a judgment for the claimant. But the Court of Appeals has established the rule that in this class of cases the testimony must not only be clear and convincing but of the clearest and most convincing character and given and corroborated in all substantial particulars by disinterested witnesses. I am of the opinion that the evidence in this case is not sufficient to justify a finding in favor of the claimant.

There is no doubt that, under the somewhat stringent rules laid down by the Court of Appeals in this class of cases, many fictitious claims are defeated and some meritorious ones as well. Many persons come into court with just claims of this character that cannot be proven by the "clearest and most convincing proof." It behooves persons performing services for near relatives, or aged people, not to base the contract of employment upon oral agreements or mere promises to recompense by will, but to insist that the contract shall be clear and reduced to writing.

The claim must be dismissed.

The form of the decree and the allowances may be adjusted at any regular term day on five days' notice by mail to each of the parties who has appeared.

Decreed accordingly.