Matter of the Claim of MARY FORDHAM against the Estate of JOHN M. WEVER, Deceased.

(Surrogate's Court, Clinton County, July, 1916.)

*Executors and administrators — judicial settlement of accounts — claim for services in nursing one on promise of decedent to pay therefor disallowed.*

PROCEEDING upon the judicial settlement of the account of executors.

Charles J. Vert, for claimant.

Benjamin F. Feinberg (John H. Booth, of counsel), for executors.

BOIRE, S. This is a proceeding to determine the merits of the claim of the above-named claimant, as part of the judicial settlement of the account of the executors of the late John M. Wever.

The decedent was a banker, a man of some wealth. The claimant filed a claim of $1,000 against this estate, for her alleged services in nursing and caring for Howell E. Fordham, the uncle of claimant's husband. It is asserted by the claimant that the decedent obligated himself, by his original promise, to pay for the care and nursing of said Howell E. Fordham (now deceased), the latter having been a former employee of said John M. Wever.

From the evidence it appears that the decedent did, through the bank of which he was president, honor the checks of the late Howell E. Fordham for board and room, during all of the period covered by the claim now to be determined; and it is the attitude of the claimant that the decedent had himself paid the checks drawn in favor of the claimant, and that the claim now advanced is but one of two obligations entered into by the decedent — one for board and room, and one for care and nursing. It is conceded

47

that the first named obligation was fully discharged by the payment of seven dollars per week during approximately the last two and one-half years of the lifetime of said Howell E. Fordham.

The claimant has attempted to sustain the burden of proof by the testimony of her husband and that of two physicians, who gave pretty nearly all of the testimony relied upon by the claimant to establish her case.

The foregoing is a general outline of claimant's case, but that of the executors consists mainly of matters brought out on cross-examination of claimant's witnesses, from which it appears that said Howell E. Fordham died leaving no estate, and that the claimant's husband — if not claimant herself — was in financial difficulties during all of the period covered by the claim — a period of many months, I believe about two and one-half years.

Claims of this character are not usually looked upon with favor by the courts, inasmuch as experience shows that an executor is rendered practically helpless against a claim based on an alleged verbal contract made by his decedent, and a high order of proof is required to establish such a claim, and even then the courts carefully scrutinize the allowance thereof. It can scarcely be claimed that the husband of the claimant is a disinterested witness — although a competent one; and it is no discredit to the claimant's chief witness that he is found to be deeply interested in the success of his wife's claim, nor is it a reflection against one of the physicians that he be not considered perfectly disinterested, by reason of the fact that he himself was the owner of a contested claim against this estate at the time he testified. So that to my mind the claimant's case was not supported by disinterested witnesses; and, aside from this one defect in claimant's case, I was very much impressed with the peculiar circumstances, to wit, the lack of

legal obligation on the part of the decedent to support Howell E. Fordham; the apparent contract made, as was the fact, for a period of two weeks or so, and by the decedent faithfully kept of two and one-half years, during all of which time this claimant received, on account of one of her own relatives residing in her home, the sum of seven dollars per week. It is not necessary — probably not fair — to cast reflection on either the claimant or her witnesses, but I am persuaded if the claimant's witnesses attempted to tell the truth — which they probably did — that the obligation, either expressly made or hinted at by the decedent to these witnesses, was the very obligation which the claimant admits was fully discharged by the decedent. One would scarcely expect that witnesses testifying to a conversation, three or four years after its occurrence, would so remember its every detail as to unerringly characterize it as referring to one particular thing, when a slight change in the recital of such conversation would make it apply equally well to either one of two similar and almost contemporaneous objects. It would indeed be an unfortunate thing if a worthy claimant were by this decision denied justice; but there is a certainty that claims of this character, if allowed, are often a source of grave injustice; and I am persuaded and believe even in this particular case no injustice is done by the disallowance of the claim. Certain it is that the claim comes squarely within the ban of the higher courts of this state, if not within the denunciation of some of the comparatively recent cases.

I find that the claim should be disallowed for three principal reasons:

*First.* Because it was withheld for a considerable period of the lifetime of the wealthy obligor, even while claimant was apparently very much in need of funds.

*Second.* During the time covered by this claim

the claimant was being paid by the decedent the sum of seven dollars per week for keeping the person whose care is the subject of this claim. The natural inference is that such payments were to cover all the claimant's services in the case.

A third defect which I find in the proof is the fact that the claim cannot be upheld without the testimony of the claimant's own husband, whose own interests are so involved in this particular transaction that he is practically a party to the proceedings; and I find that even his testimony is equivocal, as is most certainly that of the two physicians, who, I feel quite confident, were not prepared to state that the conversations they had had with the decedent did not apply to the obligation which it is conceded has been discharged.

I am led to the foregoing conclusion by the following cases, which I think are controlling in the decision of the claim, and leave no alternative except its dismissal. *Matter of Draper,* 74 Misc. Rep. 335, and the many cases therein cited from the Appellate Division and Court of Appeals of this state. These cases, together with those of *Rosseau* v. *Rouss,* 180 N. Y. 116; *Scheu* v. *Blum,* 119 App. Div. 825, I believe cover all of the points of the testimony herein, and correctly cite the law applicable and controlling in the peculiar circumstances of this case.

Decreed accordingly.