NEW YORK COUNTY—HON. ANTHONY L. ROBERTSON, SURROGATE—
December, 1849.

## *In re* PLACE.*

*In the Matter of the accounting of* NELSON PLACE, *adminis-trator* de bonis non, *&c., of* JOHN ADAMSON, *deceased.*

An administrator's account ought to present clearly, so as to be seen at a glance, results, in reference to which the decree is final, so as to enable the court readily to make the abstract required by law, and an omission to do so is ground of legal suspicion; but an account cannot be rejected, merely because it mingles with statements as to personal property, statements as to the proceeds of real property.

An heir-at-law, who, upon an accounting of the administrator, knowingly receives from the court in which such accounting is had, a certain sum as his share of the proceeds of land sold by such administrator, is estopped, in equity, from denying the validity of the sale.

The power of an executor at common law is confined to personal estate. An executor has power over real estate, *ratione officii*, in three cases only. 1. Where no trustee to sell is named, and the proceeds of land sold are to pay debts and legacies. 2. In cases under the provisions of the Revised Statutes (2 *Rev. Stat.*, 109, § 55), permitting a sale by those executors alone who have proved a will. 3. In cases where the survivorship of a naked power to sell is in question, where one of several donees of it, also made executors, remained.

Where an executor is removed by a surrogate, the person succeeding to the administration is not chargeable with moneys collected by the former, or the value of chattels to whose use a legatee is entitled for life by the will.

Statutory provisions conferring on administrators with the will annexed the right of exercising powers of sale given to executors—stated.

---

* Reported in 7 *N. Y. Leg. Obs.*, 217.

THE SURROGATE.—This is an application to enforce an account by an administrator with the will annexed, of assets left unadministered by a former executor. An account has been rendered by him, to which several objections are made by the applicant. These objections may be reduced to three. *First.* As to the form of rendering the account by mixing personal and real estate together. *Secondly.* That the administrator has included in his account the proceeds of certain lands belonging to the testator, sold by him by virtue of a power given in a will to the executors therein named. *Thirdly.* That he has not accounted for assets in the hands of the former representative.

As to the first objection.—If the statement offered as an account comprehended a full detail of all assets received and paid out, and of the condition of the estate, I do not know that a Surrogate's Court, not being a court of record, can lay down strict rules for the government of litigants as to the form of presenting their rights; but a confused and miscellaneous statement must always be looked at with suspicion; particularly where the statute itself points out the effect of the account when passed. The account ought to present clearly, so as to be seen at a glance, those results in reference to which the decree is final, and so as to enable the court readily to make the abstract required by law. A deviation from established practice must be looked upon as being intended to obscure the investigation, and therefore the presumption must be against their accuracy in weighing evidence; but I do not know that I have the power to reject accounts simply because the different elements are intermingled. This objection I must, therefore, overrule.

In reference to the second objection, it is urged, that if the administrator with the will annexed choose to become responsible for the sum inserted as the price of the lands, the heir cannot be prejudiced, as his title to the land, if any, would remain unimpeached. But I apprehend that the effect of a decree, on the basis of admitting this item, and the payment of the amount to the next of kin, would be precisely the same

thing as payment directly by the administrator of the proceeds of the sale, as such, to the heir, and that the latter receiving them as such would be estopped, at least in a court of equity, from denying the purchaser's title (*White* v. *Swain*, 3 *Pick.*, 365; *Jennison* v. *Hapgood*, 10 *Id.*, 77; *Hicks* v. *Cram*, 17 *Verm.*, 449), for, by not objecting, he induces the administrator to part with the money. It is therefore incumbent on the court to pass upon this question of his power in a proceeding like this, where both parties are actors.

It becomes necessary, in the first place, to consider the power of an executor, as such, at common law. That power will be found to be strictly confined to the personal estate; of that he was the "*hæres nominatus;*" the residuary legatee, after payment of debts and legacies. It was only by help of a supposed claim on his conscience, by words of trust in the will, he was subjected to the jurisdiction of ecclesiastical tribunals as trustee for the next of kin. Every elementary writer, even the most modern, defines and treats him as such representative of personalty alone. Blackstone entitles him " the person to whom the execution of a last will and testament of personal estate by the testator's appointment is confided." (2 *Com.*, 503; see *Farrington* v. *Knightly*, 1 *P. Wms.*, 548, 549.) As far back as *Shepherd's Touchstone*, the only things described as assets in his hands, are "goods, chattels, actions, and commodities," all being personal. This principle is adhered to and taken for granted in all existing statutes, in regard to the duties, powers, and control over executors and administrators. Letters of administration are entitled of the " goods, chattels, and credits," of intestate persons (2 *Rev. Stat.*, 73, § 63), which in subsequent parts of the statute are considered as synonymous with assets. Their power to commence suits is confined to the personalty. (2 *Rev. Stat.*, 113, § 3.) The inventory which is to be filed, is of goods, "chattels, and credits" (2 *Rev. Stat.*, 82, § 2), which are termed assets in the enumeration of what are to be assets (*Id.*, § 6), and in one section (§ 7), the distinction between an executor and a devisee is marked. The final account which

is to be rendered, is solely of personal estate (2 *Rev. Stat.*, 94, § 65). It thus appears that the Legislature had distinctly in view, in framing the statutes as to executors and administrators, their limited authority.

"But," as an excellent writer on the powers of executors observes (2 *Williams on Ex.*, 1033), "there are besides various interests frequently forming part of the estate of an executor or administrator, which are not recognized as assets in law, and which, therefore, if administered at all, must be administered in equity. This latter portion of the estate, in the hands of an executor or administrator, is called equitable assets, in contradistinction to the former, which is called legal assets. In other words, legal assets are such as are liable to debts in the temporal courts, and legacies in the spiritual, by the course of law. Equitable assets are such as are liable only by the help of a court of equity." The grand practical distinction to suitors, as to those two kinds of assets, was, that legal assets were subject to preferences among creditors, while the other were distributable equally; this distinction is observed in the only cases where, by statute, proceeds of lands in the hands of an executor are made amenable to the jurisdiction of Surrogates' Courts. Generally, the assets in the hands of an executor are to be applied in a certain order of priority to the payment of debts. (2 *Rev. Stat.*, 87, § 27.) If a will orders real estate to be sold to pay debts, where the conversion is "out-and-out," the surrogate before whom it is proved, has jurisdiction to decree distribution; but then the same order of preference as to debts is to be observed as if originally personal property. (2 *Rev. Stat.*, 110, § 57.) But in case of a sale of land by order of the surrogate (2 *Rev. Stat.*, 106, § 38), or where it is merely authorized by a will to be sold by executors (*Laws of* 1837, 537, § 75), (which is discretionary), the proceeds are to be divided equally among all creditors, without observing any preference. While this distinction seems to have been kept in view by the framers of those statutes, they seem also to have considered distinct and separate provisions necessary

to give a Surrogate's Court jurisdiction over the proceeds of land. This latter necessity was pointed out by the decisions which settle that the proceeds of land sold by authority of a will are merely equitable assets. (*Clay* v. *Willis*, 1 *Barn. & Cress.*, 364; *Barker* v. *May*, 9 *Id.*, 489.)

The statutory provisions referred to, make the distinction between an out-and-out conversion and a discretionary authority, by a marked difference in the language. In addition to this, the three sections relating to the sale of real estate under an authority contained in a will (2 *Rev. Stat.*, 105, §§ 31, 32, 33), use only the word "executors;" yet in all other parts of the statute, where a duty common to both is spoken of, "executors and administrators" are always coupled together; taking for granted, therefore, that such power can only be exercised by an executor.

From these considerations, it follows, that by this body of statutory law, the character of the executor and his peculiar trust are preserved. The court, by whom he is appointed, and who has jurisdiction over his conduct, is confined in its exercise to personal property. Express additional jurisdiction is conferred on it only in specific cases, in which the distinction between the trust property which passes into his hands as trustee or as executor is still preserved. In giving such additional jurisdiction, its exercise is confined in terms to the original trustee, and not extended to any substitute appointed by the Surrogate's Court. And lastly, the commission of such substitute in the shape of letters of administration, is simply to administer "goods, chattels, and credits." (2 *Rev. Stat.*, 73, § 23.) Provisions, therefore, for conferring additional powers upon the administrator, must necessarily be anomalous, and not intended to be subject to the general provisions of the statute, and can derive no support from the general scope and object of the statute; or in other words, ought to be strictly construed.

This view will be found to be greatly strengthened by a variety of other provisions in the statute, which would render the execution of a power of sale of lands, or a trust to sell

them by an administrator with the will annexed, mischievous in the extreme. First, as to the person to be appointed; secondly, as to notice of the proceedings to the parties interested; thirdly, as to the proof of the will as far as it relates to lands; fourthly, as to the security; and fifthly, as to his accounting. A court of equity is unrestrained in its discretion as to the person to be selected as a trustee; and relationship has no effect; nay, most frequently the nearest relatives are the object of the trust, or *cestuis que trust*, particularly where they are females, such as wives, children, or those who are children of the same parent. Yet the surrogate has no discretion, unless there is a personal objection, but must appoint the widow first, and then the next of kin (2 *Rev. Stat.*, 71, § 14); and not unless there is no residuary legatee, or principal, or specific legatee, though they have no interest in the real estate, can he exercise unlimited discretion in the appointment. Secondly, the appointment is made without notice to any of the *cestuis que trust*. (2 *Rev. Stat.*, 74, § 27; 76, § 35.) Thirdly, it is not prescribed anywhere that any investigation shall be made into the execution of the will as a will of real estate, before granting letters of administration with the will annexed; nay, they may even be issued on a will proved abroad as a will of personal estate only. (2 *Rev. Stat.*, 70, § 6.) Of what avail would the deed of such an administrator be? Lastly, the only accounting and distribution by the order of the surrogate prescribed, is of personal estate (2 *Rev. Stat.*, 95, § 72), except that under the two sections to which I have already referred (2 *Rev. Stat.*, 110, § 57; *Laws of* 1837, 537, § 75), which are in terms confined to executors strictly, and are made separate objects of jurisdiction. Nay, it was deemed expedient in the very clause which is alone relied on for the power claimed, to add the words prohibitory of the exercise of power, the qualifying words, "as such executor." (2 *Rev. Stat.*, 71, § 15.) These latter, of course, would be unnecessary, if there were no distinction in the powers of executor and devisee in trust.

But if such a power be anywhere given, it would clash

with the powers given to the Court of Chancery. The statute in regard to trusts (1 *Rev. Stat.*, 728, § 55) speaks of executors, but says nothing as to administrators with the will annexed; and that, although two of the trusts enumerated are those usually discharged by executors. It also provides expressly that on the death of a surviving trustee, the trust shall devolve on the Court of Chancery, and be executed by some person appointed by it for the purpose. (1 *Rev. Stat.*, 730, § 68.) It may also accept a resignation of, or remove, a trustee and appoint a new one (*Id.*, §§ 69, 70, 71); which provisions are also extended to powers in trust. (*Id.*, 734, § 102.) It does not require much imagination to suggest extraordinary conflicts of jurisdiction, unless the Court of Chancery is deprived of it where a trust is attached to an appointment as executor, or even in any case where a trust is created by a will; for, clearly, it cannot appoint an administrator, which power is exclusively vested in the Surrogates' Courts : and if it should appoint a testamentary trustee, and the surrogate appoint an administrator with the will annexed, whose powers are to predominate? If the Court of Chancery removes a trustee, it may appoint a new one; does he become administrator also? No one can believe, when this statute was drawn and passed, its framers, or the legislative body that adopted it, dreamed of a surrogate appointing a testamentary trustee of lands.

I think the clause of the statute in question (2 *Rev. Stat.*, 72, § 22) may, after this examination of other statutes upon similar subject-matters, be handled without any danger of giving it an extended signification beyond its ordinary interpretation, unless too plain to admit of doubt : in such case, we are bound to think the lawmakers had some object in view which has escaped our observation. The language, which is peculiar, is as follows : " The administrators with such will annexed shall have the rights and powers, and be subject to the same duties, as if they had been named executors in such will ;" not, " the persons named as executors in the will," nor even, " as if they had been executors ;" but

simply, as "if they had been named executors." This phrase-
ology, "being named executors," is used throughout the stat-
ute; by which it is evidently intended to convey only the
idea of the use of such language in the will as would confer
the ordinary powers of executors, and not as though the
names of the administrators were to be considered as being
substituted in the will in the place of the persons designated
as executors. "To name a person an executor" in a will, gives
him certain definite powers (*God. Orph. Leg.*, 2, ch. 5, § 1);
and if he has any other powers, it must be by some other
mode than naming him an executor. It is barely possible
that the words of this statute could be literally complied
with, and the powers of a devisee in trust conferred on an
administrator, where a testator, without giving the names of
his testamentary trustees in the clause devising to them,
should devise lands in trust to the parties "therein named as
executors," and should afterwards name his executors; but
it still would be adverse to every other part of the statute.
In this phrase the language is slightly varied from that of
the statute on which it is founded (1 *Rev. L.*, 316, § 21),
where it is, "as if they had been executors named" (or desig-
nated) "in the will;" which much more strongly favors this
interpretation, now contended for, its stress being not on the
epithet of "executors," but as if their names had been in-
serted in the will; yet even it was never imagined to convey
such power. Another clause (2 *Rev. Stat.*, 71, § 15) is called
in aid of the suggested interpretation, which prescribes that
"every person named *as* executor in the will, and not named
as such in the letters testamentary, shall have no power as
such executor;" but it is actually adverse to it, for it has been
thought necessary to add in it the words "as such executor"
to the general restriction,—implying, of course, other powers
subsisting in him besides those as executor. The object of
this provision was solely to change the law, by which the
admission of a will to probate gave full power to the persons
named as executors in it, without any letters testamentary.

I therefore do not see that the literal interpretation of the

words of this clause requires the gift to administrators of all the powers of a devisee in trust, as assumed in the case of *Egerton* v. *Conklin* (25 *Wend.*, 225). But it seems to be supposed that there is a species of intermediate interest in real estate where the rights of a personal representative and a devisee in trust do not clash; that this is not strictly either assets or a trust estate, but the executor is supposed to have control over it, not as executor strictly, but "*virtute officii*;" that expression for this purpose being understood to mean his office, instead of being his mere duty, as it ought to be interpreted. I have been much embarrassed to understand what is meant by this interest; whether it means powers and trusts given by a will to the executors of it, not by name, but designating them by that term, or whether it means the gift of powers to discharge executors' duties; that is, pay debts and legacies, and make distribution. It is to be remembered that a devisee's rights are complete on the death of the testator; an executor's, not until after probate. The proof of a will before the surrogate as a will of real estate is only *prima-facie* evidence of its execution (2 *Rev. Stat.*, 58, § 15), while letters of administration are issued on its proof as a will of personal estate only (2 *Rev. Stat.*, 69, § 1). So, too, if the controversy be carried on in different courts, a will might be avoided as to one and not as to the other subject of its disposition. Nay, the will might not dispose of a particle of personal estate, and appoint no executor, so as to be incapable of being proved as a will of personal estate; will it be contended that a devisee in trust could not sell without probate? This idea, however, of an executor's powers over real estate "*virtute officii*," may be traced to three sources. First, where the proceeds of lands are to be applied to the payment of debts and legacies, which are the duties of an executor, and no trustee to sell is named, it is presumed to have been the intent of the testator that a person named as executor should be such trustee. (*Sugd. on Pow.*, 4 ed., 174.) Secondly, under the statute of 21 Henry VIII., ch. 4, substantially the same with 2 *Rev. Stat.*, 109, § 55, passed to

remedy the defect, in case parties do not take upon them the execution of a will containing a power to sell; in that statute, the words "lands willed to be sold by executors," deceased, were held to include devises to executors to sell (*Co. Litt.*, 113, a); but that interpretation was limited to cases where the devisees were executors to an estate given to them *as executors*, or to enable them to make distribution. (*Denio* v. *Judge*, 11 *East*, 288; *Bonifant* v. *Greenfield*, *Cro. Eliz.*, 80.) Thirdly, in cases where the survivorship of a naked power was in question, where one of the several donees of it who were also made executors, remained: there, where the power was given to the parties by name, and not to the executors, its surviving was doubted. (*Sugd. on Pow.*, 167, 4 ed.) It is only in these three classes of cases, and either in reference to the person who was to take, or the character of the power, or its survivorship, that the question can arise of taking a power not "*virtute*," but "*ratione officii*;" that is, not by force of having the duties of an executor to perform, but by reason of being an executor. (*Co. Litt.*, 113, a; *Sugd. on Pow.*, *supra*.) After a diligent investigation of all the cases, I have been unable to find any other in which the fact of being clothed with the powers of an executor has any effect upon a power over land. I do not, therefore, perceive how any of these principles can have the effect of vesting an administrator with a power of sale of lands.

But it may be wondered how so apparently sweeping a provision crept into the statute. If we trace it to its source, it will be found to have originated in a statute whose object was not to prescribe the powers of those who were to distribute, but the rights of the distributees, and formed an isolated provision in the English statute of distribution (2 *Ed. Stat.*, 395, § 9), from which it passed into the revision of the laws of this State, in 1787 (1 *Greenl. L.*, 368, § 16), directing the will of a testator to be observed, even where there was an administrator. In laws passed in 1801 (1 *Rev. L.*, 541, § 20), whose title did **not** have the slightest reference to real estate, and only prescribed the duties of executors, was added

the provision that the act should extend to administrators with the will annexed, with the view of preventing unnecessary repetition in the body of the act, when executors were spoken of; with this view also it was transferred to the statutes of 1813 (1 *Rev. L.*, 316, § 21), from which it was adopted in the Revised Statutes. In none of the periods of existence of those statutes was the power ever sustained, although the want of any concurrent provisions inconsistent with such interpretation might have rendered it much more plausible than under the present statute.

With this mass of concurring testimony, I am constrained to decide according to the opinion of the Supreme Court in *Conklin* v. *Egerton* (21 *Wend.*, 432), that the administrator with the will annexed cannot exercise a power of sale contained in a will, though some judges of the court above, on an appeal taken in that case (25 *Id.*, 225), seem to have come to a summary conclusion to the contrary. Their views are mere *obiter dicta*, as the decision was put on other grounds: for neither is the language as broad as they seem to suppose, as I think I have shown; nor is the inconvenience of appointing a testamentary trustee by the Court of Chancery greater than that of appointing any other trustee; and the section to which I have already referred (2 *Rev. Stat.*, 71, § 15), on which so much stress is laid, only prohibits powers "*as executor*," and not generally; and it may be more rationally doubted whether the appointment of an administrator, the mere representative of personal estate, at all affects trusts or powers created by devise, than whether he acquires control over them.

For these reasons, I must hold the sale of lands by the administrator with the will annexed void, and the proceeds thereof, as well as the rent of the land, must be excluded from the accounts, as well as all moneys paid out on account of the real estate.

In regard to the third objection to this account, as to the omission to charge the administrator with money or property in the hands of the executor, he is not chargeable with any

moneys collected by that executor, for which the parties have their remedy against his representatives, but only with such assets as came specifically into his hands or were lost by his neglect. So, too, he is not chargeable with the value of any chattels in the use of which a life-estate is given to the widow of the testator, or any other person; the parties in remainder having their remedy, in case of danger, by requiring security.

The account must, therefore, be referred to an auditor with the usual powers, who is to amend it by excluding therefrom all charges for the proceeds of real estate sold, or any payments or expenditures on account of real estate, and is only to charge against the administrator moneys lost by his negligence, or the value of any articles left in the hands of a legatee who had a life-estate therein.