---

(10 Misc. Rep. 486.)

### In re STRICKLAND'S ESTATE.

(Surrogate's Court, Cattaraugus County. December, 1894.)

1. EXECUTORS AND ADMINISTRATORS —ASSETS — PROFITS OF LAND WORKED ON SHARES.

    The owner of land entered into an agreement with one J. providing that "the party of the first part [owner] agrees to rent his farm," with the stock thereon, to J. for a certain period; that J. should take the milk to the cheese factory, enter it in the name of the first party, to whom the proceeds should be payable, and do all the work on the place as the first party should direct; that each party should furnish half the seed and pay half the taxes; and that "otherwise the place is to be let to the halves." *Held*, that such agreement was not a lease, and therefore the proceeds of the milk sold to the cheese factory were personal assets, and did not go to the heirs as rent.

2. SAME—PAYMENT FOR SERVICES—MEMBER OF FAMILY.

    The presumption that services rendered to decedent in his last illness by his daughter were gratuitous is overcome where it appears that the daughter was married, and at the beginning of her father's sickness left her home, and at his request stayed with him until he died, and he said that she should be paid for it.

Judicial settlement of the accounts of George M. Strickland, administrator of Samuel B. Strickland, deceased.

D. E. Powell, for administrator.

O. S. Vreeland, for contestant.

DAVIE, S. Samuel B. Strickland, late of the town of Otto, Cattaraugus county, died intestate on the 28th day of March, 1893, leaving, him surviving, a widow, one son, and three daughters. Letters of administration upon the estate of deceased were issued to the

son, George M. Strickland, May 27, 1893. In the administrator's account filed for judicial settlement he charges himself with "cash from cheese factory, $157.24," but during the progress of the accounting the administrator sought to withdraw this item from his account, claiming that the facts, as disclosed by the evidence, showed this fund not to be an asset, but to belong to the heirs. The circumstances from which this controversy must be determined are as follows: The intestate, at the time of his death, was seised and possessed of a farm of about 125 acres, and the owner of the stock and farming implements thereon. On the 9th day of November, 1892, he entered into an agreement in writing with one Jenkel relating to operating the farm during the ensuing season. Such contract provided that "the party of the first part agrees to rent his farm in the town of Otto, consisting of about one hundred and twenty-five acres of land, together with from fifteen to eighteen cows that are now on said place," until the 1st day of December, 1893; that Jenkel should do all the work on the place in a good, workmanlike manner, cut all noxious weeds, build the necessary fences, milk the cows with regularity, draw the milk to the cheese factory as soon as it should open, make butter when factory was not in operation, take good care of the cows, house, barn, do all the work as the first party (Strickland) might direct, and generally to perform the work upon such place under the direction of the first party; each party to furnish one-half of the seed and all other "findings," and pay one-half the taxes; the milk to be entered at the factory in the name of the first party; the proceeds thereof to be drawn by him, and out of such proceeds to pay the taxes, and to retain therefrom "what other moneys may be due the said party of the first part in consequence of the second party failing to perform such agreement on his part," and to pay one-half of what might remain to the second party; that the hay, straw, and "coarse fodder" be left upon the place; "and otherwise the place is to be let to the halves." The $157.24 in controversy is the portion of the avails of the milk taken to the factory to which the intestate would have been entitled had he survived, and which was in fact paid to the administrator. It is claimed by the administrator that this money, under the provisions of the agreement referred to, is rent for the land, and, not having accrued prior to the death of the intestate, belongs to the heirs. The statute defines quite distinctly what are assets. Section 6, subd. 7, art. 1, tit. 3, pt. 2, c. 6, 2 Rev. St., provides that "rents reserved to the deceased, which had accrued at the time of his death," are assets. If, however, such rents had not accrued—that is, become due and payable—before his death, they belong to the heirs. This principle is not modified by the fact that the lease covers and provides for the use of personal property in connection with the real estate. Fay v. Holloran, 35 Barb. 295; Marshall v. Moseley, 21 N. Y. 280; Armstrong v. Cummings, 58 How. Pr. 332. In the case last cited the court cites, among other authorities, the case of Newman v. Anderton, 2 Bos. & P. (N. S.) 224, where Mansfield, C. J., states the rule to be that "it must occur constantly that the value of the demised premises is increased by the goods upon the premises, and yet the rent reserved still con-

tinues to issue out of the lands and not out of the goods." Hence it is quite apparent that, if the agreement referred to was a lease of the farm, and the relation of landlord and tenant was thereby created between the intestate and Jenkel, and the money which the intestate was to receive from the avails of the milk taken to the factory was rent for the use of the farm, within the usual and technical meaning of the term, then the administrator is right in his claim, and he is not authorized to distribute this money as assets. But the confusion in the mind of the administrator as to the proper disposition of this fund arises from a misunderstanding of the true nature of the agreement. The authorities are quite numerous holding that an agreement of the kind which the parties made in this case is not a lease, and that the profits which the landlord derives from such an arrangement are not rent. In Taylor v. Bradley, 39 N. Y. 129, the agreement was very similar to that entered into between the intestate and Jenkel. In the case cited such agreement was under seal, and it provided that the owners of the land "do by these presents lease and to farm-let all said lands to the parties of the second part." Then followed specific details as to the furnishing of seed, the mode of cultivation, the care of the sheep, which were to be furnished by the first party, for a division of the wool produced, and that the second parties "should yield, pay, and give to the parties of the first part one-half of all the grain raised, to be delivered," etc. The court, upon reviewing the various authorities construing agreements of this character, says:

"The balance of authorities above cited seems to be that, notwithstanding the technical terms employed, such an agreement does not amount to a technical lease; that the relation of landlord and tenant is not contemplated, and the portion of the crops reserved to the owner is not rent, but compensation for the use of the land, while the other portion is compensation to the occupier for his work, labor, and services; that the legal possession of the land is in the owner, and the two are tenants in common of the crop."

To the same effect, see Reynolds v. Reynolds, 48 Hun, 142.

If, then, the contract between intestate and Jenkel was not a lease, the $157.24 in controversy represents simply the earnings or avails of the personal estate of the intestate, and must be disposed of in the same manner as any other increase of the personal estate coming into the hands of the administrator.

The real estate of the intestate was incumbered by a mortgage thereon at the time of his decease, which mortgage was foreclosed after his death, and the premises sold, and a judgment for deficiency upon the bond of intestate accompanying such mortgage obtained, amounting to about $1,000. This judgment is now owned by the contestant, and he has duly presented his claim to the administrator, and the claim has been duly allowed. The total personal estate of intestate is insufficient to pay his debts in full; hence the question is whether the administrator shall distribute this fund in controversy among the creditors, or to the next of kin, of intestate. In view of the authorities above referred to, construing and determining the character of agreements like that existing between intestate and Jenkel, it must be held that this fund is an asset, and that it should

be distributed, together with the other moneys in the hands of the administrator, among the creditors whose demands have been duly established, pro rata.

It appears from the account filed that Phoebe M. Hayes, a daughter of intestate, had presented an account to the administrator for labor and services claimed to have been rendered by her to the intestate during his last illness, which claim has been allowed by the administrator. The contestant objects to this item of the account, asserting that whatever services were rendered by the claimant, who is a daughter of intestate, were so rendered gratuitously, and without expectation of compensation therefor. The evidence quite clearly shows that Mrs. Hayes attended upon and nursed the intestate during the last three weeks of his life, and that he was in a situation rendering his care somewhat onerous. The services were quite likely worth the amount charged. The question regarding this item is whether the evidence discloses that such services were rendered in consequence of the express promise of intestate to pay therefor, and, if not, are the circumstances attending the transaction such that the claimant is entitled to recover upon an implied promise? I have carefully examined the authorities where claims for services rendered by one member of a family for another have been disallowed, and the fundamental principle underlying all such authorities seems to be that, where the relations existing between the parties are such that it is evident the services were performed as acts of gratuitous kindness and affection, without any expectation of pecuniary compensation, and in consequence of reciprocal obligations and advantages, the law will not imply a promise to pay. The rule is stated in Moore v. Moore, 21 How. Pr. 223, to be that ordinarily, from the fact of rendition and acceptance of services beneficial in their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be wholly repelled by the fact that the services are rendered to a parent by a son of full age, but the legal presumption of an obligation to pay is less strong where the relation of parent and child exists than in the case of persons not bound to each other. If to the relationship be added other circumstances tending to show, as a matter of fact, that the services were gratuitously rendered, without any expectation at the time on either side that payment was to be made therefor, the law will not imply a contract for compensation. In this case the only circumstance from which it could be inferred that the services were gratuitously rendered is that of the relationship existing between the intestate and the claimant, but this is not sufficient to justify such inference in this case. The claimant was not a member of the intestate's family prior to the commencement of the services. She was a married lady, with a husband and family and home of her own. At the beginning of her father's sickness she went from her home to his residence, was requested by the intestate to stay and care for him, he saying, in substance, that he had money to pay for what was done for him; that he had money in his pocketbook to pay for her services; that he wanted her to stay, and that she should have her pay. These requests and statements, if not sufficient to sustain a

finding that such services were rendered under an express promise to pay therefor, are certainly sufficient to overcome the presumption arising from the relationship of the parties that such services were gratuitously rendered. It should be held that this claim is a valid debt against the estate, and, as such, entitled to share in the distribution. A decree will be accordingly entered. Decreed accordingly.