Where administrators of an intestate assumed possession of his property and exercised dominion over it, a surrogate has no jurisdiction to settle a controversy arising out of their acts.

**2. DESCENT—DEATH OF INFANT—RIGHTS OF FATHER.**

Where an infant dies without lawful descendants, intestate, his father instantly inherits the infant's share in lands which he owned as tenant in common, and on the loss of the buildings thereon by fire the insurance moneys belonged to the father as heir, of which he cannot be deprived because the policies ran in the infant's name, and not in that of the father.

**3. ADMINISTRATORS—APPOINTMENT—INTEREST IN ESTATE.**

Where an infant left neither personalty nor any debts, but certain real estate in which he was interested was destroyed by fire, administrators will be appointed to settle the loss, and in so doing will be deemed trustees for the father, as heir, in receiving payment from the insurers, and will take nothing as administrators.

**4. SAME—ACCOUNTING.**

Where, after division of insurance fund on property held by tenants in common, an amount belonging to a deceased intestate infant was paid out on the father's debts by the administrator as his trustee, the fund was that of the father, and not of the infant, and a trustee in bankruptcy for the creditors of the father cannot, on his death insolvent, make the surviving creditor of the infant account to them for the share which the father inherited.

In the matter of the estate of Francis Kane, deceased. Petition of Henry A. Conway, trustee in bankruptcy of Francis Kane, deceased, praying that the administrator might render his account. Petition denied.

Samuel Foster, John P. Curley, and John T. Norton, for trustee in bankruptcy of Pierce D. Kane, deceased.

Edmund J. Sweeney and Albert C. Comstock, for James H. Kane, administrator of Francis Kane, deceased.

¶ 3. See Executors and Administrators, vol. 22, Cent. Dig. § 297

HEATON, S.　On the 4th day of October, 1901, Henry A. Conway, as trustee in bankruptcy of Pierce D. Kane, deceased, filed in this court a petition praying that James H. Kane, as surviving administrator of the estate of Francis Kane, deceased, might be ordered to render his account as such administrator, and pay to such trustee about $7,000, alleged to be in his hands.　Thereafter, and on the 24th day of December, 1901, such administrator filed his petition for judicial settlement of his accounts, in compliance with an order of this court, together with an account of his proceedings, and citation was issued by which Pierce D. Kane, Jr., Nicholas J. Kane, and Elizabeth D. Mahoney, next of kin of Francis Kane, deceased, and Henry A. Conway, as trustee in bankruptcy of Pierce D. Kane, deceased, were brought into court.　An amended account and answer of the administrator was filed, alleging that whatever money had been received by such administrator was proceeds of insurance policies upon real property owned by Francis Kane at the time of his death in common with four other persons, and that all of such money had been expended and paid out by such owners and by such administrator with the consent of such owners and of Pierce D. Kane, now deceased, who was the sole heir and next of kin of said Francis Kane, and that such money did not come to the hands of such administrator as administrator, and that as such he is not accountable therefor.　The trustee in bankruptcy was allowed to reserve his right to file objections to such amended account until the determination of the question as to whether or not such administrator was accountable to him for the portion of the fund received by the administrator. Testimony restricted to such issue was then taken by consent, and the question to be decided is whether or not such administrator is accountable to the trustee in bankruptcy for such property so received by him.

On the 16th day of April, 1899, Francis Kane died, aged 14 years, intestate, and without having had a temporary, general, or testamentary guardian.　It is undisputed that he left no debts.　He possessed no personal estate, but did own in common with his three brothers and one sister an undivided one-fifth interest in certain real estate.　Upon his death his interest in such real estate descended to his father, Pierce D. Kane, who then became the owner of the same in common with his four children.　On the 19th day of September, 1899, the buildings on this real estate were destroyed by fire. There was insurance upon such buildings to the amount of $48,000, written in the names of the five children, including Francis, then deceased; the name of Pierce, the father, and owner of an undivided one-fifth of such property, not appearing in any of such policies, although eight policies, amounting to $14,500 of insurance, had been taken out after the decease of Francis.　Pending negotiations for the settlement of the loss, the father, Pierce, and his son James, were appointed administrators of the estate of Francis on December 22, 1899.　The insurance was finally adjusted at $39,991.57, and when the drafts for the same came they were in the names of the National State Bank, the four children of Pierce, and James, as administrator of Francis.　Such drafts were deposited and an account opened in

the National State Bank of Troy in the said five names, and from time to time checks were drawn on said account, signed with said five names, the name of Pierce D. Kane not appearing in any of such transactions, either individually or as administrator of Francis. This peculiar condition then existed, viz.: The name of James, as administrator of Francis, whose estate had no interest in this fund, appeared in all the transactions, while that of Pierce D. Kane, who was the absolute owner of an undivided one-fifth of this fund, did not appear. On the 17th day of July, 1900, Pierce D. Kane died intestate, unmarried, and apparently insolvent. No representative of his estate has been appointed. Withdrawals were made from such bank account in the same names as before, and about the 19th day of December, 1900, a settlement between the four children of Pierce was made, apparently giving to each a fourth of the fund, and checks were drawn on the account, closing the same. James, as surviving administrator of Francis, is now asked to account to the trustee in bankruptcy of Pierce for one-fifth of such fund.

The question has been presented as being one of real estate or personal property,—whether the insurance money remained real estate, or had been changed in character by the acts of the parties so that it had become personal estate, and was therefore the subject of an accounting by the administrator of Francis as personalty. Such question is not the real one involved. It is not the question of the character of this fund, but of the ownership of it, which is controlling. When Francis Kane died, the real estate which was subsequently destroyed by fire descended immediately and absolutely to his father, Pierce. He left no personal estate. His administrators, subsequently appointed, took nothing by virtue of such appointment, as he left no personal estate over which they could administer; and neither the account nor the proof discloses any personal estate belonging to Francis which has since been discovered. Upon the death of Francis in April, 1899, all of his property, there being no creditors, descended at once, and was vested in his father, Pierce. From that moment such property became the property and estate of Pierce, and its character or ownership could not be changed, except by the act of the owner, Pierce D. Kane. The building which was burned was real estate, as such the title to it was vested in the father as heir of Francis Kane, and its subsequent destruction by fire could not convert it into personal estate, so as to devest the right of the heir, or give a new direction or character to the money payable by way of indemnity for his loss. Wyman v. Wyman, 26 N. Y. 253, 258. The fact that the insurance policies at the time of the fire were in the name of Francis together with others did not devest Pierce of the title to the property or the proceeds of the policies. The fact that the names of the insured had not been changed when one undivided interest had descended to Pierce could not affect the title to the property, whatever might be said as to that fact affecting the validity of the insurance. If the personal assets are ample for payment of debts, the heir or devisee is entitled to the proceeds of the insurance policy. Matthews v. Insurance Co., 9 App. Div. 339, 41 N. Y. Supp. 304. Where the policy stands in the name of the deceased, his adminis-

trator may sue on the same as the trustee of an express trust for the heirs. But such money, when received, is not received, held, or accounted for as administrator, but as trustee for the heirs. Lawrence v. Insurance Co., 2 App. Div. 267, 37 N. Y. Supp. 811; Wyman v. Wyman, supra. If Pierce D. Kane, in January, 1900, had demanded and received from the administrators of Francis Kane one-fifth of the insurance money, unquestionably both parties would have acted within their legal rights; the heir in demanding the proceeds, and the administrators in paying the same over to him. The money then was real estate, the property of the owners of the real estate, and Pierce D. Kane had been the owner of an undivided one-fifth of such real estate during the nine months following the death of Francis. It appears, however, to be a fact—for what reason does not appear—that this insurance money was deposited in bank in the names of the owners of the real estate excepting Pierce, and also in the name of James, as administrator of Francis, and that the checks used in withdrawing the whole fund were signed by such owners excepting Pierce, and by James as administrator. It is argued from this that James, as administrator, has taken possession of the fund, and has assumed to deal with it as the property of Francis, and is therefore accountable for it as administrator of Francis. There seems to be very little proof upon this point, but the amended account charges the administrator with one-fifth of the fund, and credits him with payments of more than the receipts, making in connection therewith the statement and averment that such payments were made with the consent of Pierce, the father, who was unquestionably the owner of the fund. The transaction appears to have been substantially as follows: The insurance policies were in the name of Francis, with others. His administrator had a right of action to enforce them. His administrators were trustees for his creditors, if any, and for his heirs. The insurance companies insisted that such administrators should join in a receipt and release upon payment. The drafts were drawn in the names of the persons who so joined. They were naturally deposited and necessarily checked out in such names. It does not appear that James, as administrator of Francis, ever had possession or control of one-fifth of this fund. It was deposited in bank in the joint names of all the owners except the father, and could not be withdrawn without the signatures of all. Checks were drawn, not upon any particular part of, but upon the whole fund. The administrators could do no act to change the character of the fund from real to personal. The owners alone could make such a change in character. Such was the case of Jagger v. Bird, 42 Hun, 423, relied upon by the trustee. There it was held that the owners of the insurance money had changed its character so that upon the death of one of such owners her share of the fund passed to her administrator. Granting that this fund had been changed by the acts of the owners in checking it out for various purposes from real estate to personal estate, such change could have been made by no one but the owners, including Pierce. If, then, Pierce did any acts to change the character of the fund, by those very acts he assumed and obtained dominion over his portion of such fund; and when he did the acts

which converted it into personalty it was his personalty then, a's it had
been his real estate before.   Such a transaction, or such a series of
transactions, occurring nine months after. Francis Kane's death, could
not make the property of Pierce Kane the property of Francis Kane;.
neither could they make Francis Kane's administrator liable to ac-
count to Pierce Kane's creditors for such property as personal estate
of Francis Kane, whatever their rights or the rights of Pierce Kane's-
representatives might be against James Kane individually or as the
trustee for Pierce.   The money paid out was that of Pierce Kane,
disbursed by his trustee at his direction and with his consent for the
payment of debts which he owed, and for the payment of the funeral
expenses of his infant son Francis,—a debt for which he was per-
sonally liable.   Such accounting, if any, as can be required from
James H. Kane, must be sought for in another court, as the surro-
gate's court has no jurisdiction to entertain or pass upon such an
account.   Property that descends to heirs of an intestate, or passes
under the will of a testator to devisees, does not go to executors or
administrators; and if they assume possession of it, and collect the
rents, the remedy of the persons entitled to it is by a proper action
at law.   A surrogate has no jurisdiction to determine controversies
arising from such matters.   His power to control the conduct of exec-
utors and administrators is limited to property of which they have
the right of possession.   In re Spears, 89 Hun, 49, 35 N. Y. Supp. 35.
The surrogate's court has no jurisdiction to control the conduct of
an administrator in relation to property wrongfully taken posses-
sion of by him under color of his letters of administration.   In the
eye of the law such property must be deemed to be held by them
in some other capacity, and the remedy of the injured party to com-
pel a delivery of it or to restrain from the interference with it must
be sought in some other court.   In re Collyer, 4 Dem. Sur. 25.   The
surrogate has no authority to inquire into or settle the rights of the
heirs at law to property in the hands of the administrator.   Shumway
v. Cooper, 16 Barb. 556.   It has been repeatedly held that the surro-
gate has no power to direct or control an administrator as to prop-
erty to which he did not have title, or of which he had no right to take
possession as administrator.   In re Blow (Sur.) 11 N. Y. Supp. 193.
Francis Kane never had a dollar of real or personal estate which
came into the hands of his administrator as such.   Of personal estate
he had none.   His real estate was owned by his father for five months
before the fire destroyed it.   It was necessary to have an adminis-
trator of his estate appointed, not to administer his personal estate,
as he had no creditors, but to act as trustee for his heir in receiving
payment from the insurance companies, because his name was in the
insurance policies as one of the owners.   When he received the pro-
ceeds of the policies jointly with the other persons named in the poli-
cies, he was by law acting as the trustee for Pierce, the sole heir.
His subsequent dealings with the fund are entirely consistent with
that relation, and are entirely inconsistent with the ordinary duties
as administrator, a's he neither filed an inventory nor advertised for
creditors of Francis, nor did any other act appertaining to the office

of administrator. Neither did he voluntarily ask for an accounting, but was brought into court upon an order to show cause why he should not account, and then by an order of this court, made November 8, 1901, was directed to file his account, together with a petition on his part for judicial settlement. If the creditors of Pierce D. Kane, deceased, desire to have James H. Kane account for the moneys, they must proceed against him individually or as trustee in some other court, and not against him as administrator of Francis Kane in this court.

The main question having been disposed of against the contention of the trustee in bankruptcy it is not necessary to decide upon his standing in this proceeding.

Decreed accordingly.