(72 Misc. Rep. 625.)

## In re ROBERTS' ESTATE.

(Surrogate's Court, Oneida County. June, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 133*)—ACCOUNTS—CREDITS—PAYMENT OF INTEREST ON MORTGAGE.

Under Real Property Law (Consol. Laws 1909, c. 50) § 250, providing that when real property subject to a mortgage descends to an heir he must satisfy the mortgage out of his own property without resorting to the executor or administrator, unless there be an express direction in the will, an heir is required to satisfy a mortgage in the absence of proof that the premises did not descend to him, and the administrator cannot be allowed credit for payments of interest on the mortgage.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 546–549; Dec. Dig. § 133.*]

2. EXECUTORS AND ADMINISTRATORS (§ 49*)—POWERS OF ADMINISTRATOR—STATUTORY PROVISION.

Decedent Estate Law (Consol. Laws 1909, c. 13) § 117, providing that administrators shall have actions to demand and recover debts due intestate, and the personal property and effects of their intestate, and shall be accountable to others to whom the intestate was bound in the same manner as executors, limits the administrator, so far as his initiative is concerned, to the collection of debts due the estate and marshaling the personal effects of his intestate, since the administrator must look to the statute for his powers.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 49.*]

3. EXECUTORS AND ADMINISTRATORS (§ 39*)—MANAGEMENT OF ESTATE—TITLE PASSING TO ADMINISTRATOR.

The title to land contracts held by an intestate does not pass to the administrator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 280, 285–294; Dec. Dig. § 39.*]

4. EXECUTORS AND ADMINISTRATORS (§ 483*)—ACCOUNTING—CREDITS.

Where an administrator pays money due from the intestate at his death on a contract to purchase land, the payment can neither be allowed nor disallowed in his account, but must be stricken therefrom.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 483.*]

Judicial settlement of the estate of Cyrus L. Roberts, deceased. Proceedings on objections to a supplemental account of the administrators. Decree entered passing account as modified.

Geo. F. Morss, for administrators, and Globe Tobacco Co. and Edgar A. Murray, creditors.

P. H. Fitzgerald, for J. C. Buckley.

A. C. Woodruff, for E. W. Van De Walker, M. J. Lawlor, American Seed Machine Co., Wiedman Co., Clyde B. Stanton, Dr. C. W. Shaver, Reidel & Hill, Seymour Spoon, Lona Carroll, Jason Foster, C. McCarthy, M. L. Keeler, and A. M. Farnsworth, creditors.

Thomas H. Ward, for Thomas Ryan Consumers' Brewing Co.

SEXTON, S. About May 20, 1907, Cyrus L. Roberts died, intestate, and on February 23, 1910, his administrators accounted. Ob-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jections were filed, issues tried, and decision rendered December 9, 1910, which contained this provision:

"A supplemental account must be filed by the administrators which will deal exclusively with the personal property of this estate, and the expenses necessarily incurred in connection with its management."

January 19, 1911, the administrators filed a supplemental account which seemed to willfully violate the quoted direction of said decision, in that it contained many items which clearly arose from real estate transactions. This account was properly objected to as not complying with the ruling of the court; and, without trying the issues raised, the administrators were directed to file a further amended account, which they did April 10, 1911. Creditors filed objections to this account and put in issue about 20 separate items. The administrators paid out of the personal property $100.49, $127.70 and $45 as interest on real estate mortgages given by deceased, and three items of $200, $72.50, and $69.70 on land contracts entered into by the deceased for purchase of certain real estate.

[1] Maud I. Roberts, one of the administrators, is the only heir at law of the deceased, and said mortgaged property passed to her subject to the mortgages; hence the payment of the interest which accrued after the death of said Cyrus L. Roberts was her obligation, and not that of the estate. Laws of 1909, c. 52, § 250 (Real Property Law [Consol. Laws 1909, c. 50]), reads as follows:

"Where real property, subject to a mortgage executed by any ancestor or testator, descends to an heir, or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own property, without resorting to the executor or administrator of his ancestor or testator, unless there be an express direction in the will of such testator, that such mortgage be otherwise paid."

This has been the law for more than 40 years. The following cases in elucidation of the statute are in point: Dunning v. Ocean National Bank, 61 N. Y. 497, 19 Am. Rep. 293; Hauselt v. Patterson, 124 N. Y. 349, 26 N. E. 937; Matter of Hun, 144 N. Y. 472, 39 N. E. 376.

Neither the principal nor the interest of the mortgages was a charge upon, or payable out of, the personal estate of the intestate, Roberts. Carpenter v. Carpenter, 131 N. Y. 101, 29 N. E. 1013, 27 Am. St. Rep. 569.

Where no proof is made that the mortgaged premises did not descend to the heir, the statute requires the heir to satisfy the mortgage of his intestate without resort to the administrator. Cornwell v. Deck, 2 Redf. Sur. 87.

Can payments made by the administrators on land contracts entered into as vendee by the deceased be allowed?

In the case at bar, the administrators, under the defenseless title of squatter sovereignty, entered into full possession of the real estate of their intestate, and controlled, managed, and manipulated it; and one of them even attempted the conveyance of portions of it. From the beginning, strife, conceived in the womb of legal blunders and brought forth in a whirlwind of litigation, has beset this estate. Mistakes arose from the habit of advising first and examining the law

afterward; and all the trouble sprang from a misconception of the legal functions of executors and administrators, which will be briefly considered.

The practice of allowing the owner of property to, direct its destination after his death goes back to Genesis:

"Moreover, I have given to thee one portion above thy brethren, which I took out of the hand of the Amorite with my sword and with my bow."

Blackstone says that an executor is one to whom another man commits, by his last will, the execution of that will and testament. The office of executor is coeval with the right of devise, and appears to have existed and continued from the earliest period of the common law. The earliest administrator was the king, then the lord 'of the fee, and finally the bishop of the diocese, till by statute the bishop, or ordinary, was required to delegate the administration to the nearest friends of the deceased, who paid the debts and frequently retained the surplus instead of distributing it among the next of kin. This abuse was finally corrected by the statute of distributions.

While the power of making a will existed from the earliest period of the common law, still an English subject had no testamentary power over land, until the passing of the statute of wills, under Henry VIII. The common law and the English law of devise came to us in the Mayflower.

At common law, the real estate of an intestate went to his heirs; the personal, to his administrator. At common law, an executor had nothing to do with anything except the mere personal assets of the testator, and it is now the law that he must look to the will appointing him for power over the real estate. An administrator is an officer of the court, and his title rests solely upon the grant of letters of administration. At common law he dealt only with the personal estate, and that restriction still exists under the present law, save where by statute he may apply to a court of competent jurisdiction, upon a proper state of facts, for the sale of the real estate of his intestate, for the payment of his debts. Dunning v. Ocean National Bank, 61 N. Y. 497, 19 Am. Rep. 293.

Expenditures for repairs to real property, and taxes levied subsequently to decedent's death, and exclusively for the benefit of the real property, cannot be allowed an administrator on his accounting (Cornwell v. Deck, 2 Redf. Sur. 87); nor can insurance premiums paid for insurance on real estate be allowed, unless effected under the belief that the estate was insolvent (Cornwell v. Deck, supra); and this is permitted only upon the theory that in such cases it is the interest of the creditors that is protected by the contract of insurance (Herkimer v Rice, 27. N. Y. 163).

An administrator is so completely divorced from the real estate of his intestate that he may purchase it on a foreclosure sale, under a mortgage given by the intestate, and obtain title in his own name and for his own benefit. Abell v. Bradner, 11 N. Y. St. Rep. 246; Hollingsworth v. Spaulding, 54 N. Y. 636; Matter of Monroe, 142 N. Y. 484, 37 N. E. 517. The reasoning of these cases is that:

"An administrator as such has no authority or control over the real estate of his intestate, and assumes no obligations in reference to it, and owes no duty to the heirs."

An administrator, as such, has no power to contract touching the disposition of the rents and profits of the real estate of his intestate. Hillman v. Stephens, 16 N. Y. 278.

[2] While executors must look to the will, the administrators must look to the statute for their powers.

The Laws of 1909, c. 18, § 117 (Decedent Estate Law [Consol. Laws 1909, c. 13]) provide that:

"Administrators shall have actions to demand and recover the debts due to their intestate, and the personal property and effects of their intestate; and shall answer and be accountable to others to whom the intestate was holden and bound, in the same manner as executors."

This statute limits the administrator, so far as his initiative is concerned, to the collection of debts due the estate and marshaling the personal effects of his intestate.

[3] At the time of the intestate's death, he held two land contracts by which he had purchased two pieces of real estate and on each of which a sum of money was due which was paid by the administrators and for which sums so paid they now seek credit in an insolvent estate, and against the objections of creditors.

Did title to these contracts pass to the administrators? No! Why? Because they were real estate. The interest of a vendee in such a contract is real estate, and upon his death it descends to his heirs, and not to his executors or administrators; and it is devisable as real estate. Hathaway v. Payne, 34 N. Y. 92. The creditors of the deceased had a right to have these contracts sold as a part of the real estate to pay debts. Code Civ. Proc. § 2749. Section 2712 of the Code specified what shall be deemed assets which go to the executor or administrator and be included in the inventory. Land contracts of vendees are not mentioned in this section.

The real estate of the intestate descended to his heir, Maud I. Roberts, subject to the mortgages thereon; and the land contracts, being real estate also, descended to her; hence the administrators acquired no title to said mortgages or said contracts, and had no right to deal with or possess them, and owed no duty to any person or to the estate touching them.

[4] The surrogate has no power to control the conduct of executors and administrators as regards property to which they have no right of possession, and is without jurisdiction to determine controversies arising from such matters. Matter of Spears, 89 Hun, 49, 35 N. Y. Supp. 35. In the eye of the law, such property must be deemed to be held by them in some other capacity, and the remedy of the injured party to compel a delivery of it, or to restrain from interference with it, must be sought in some other court. If they assume possession of it, and collect the rents, the remedy of those entitled to possession, or the rents, is by a proper action at law. Matter of Kane, 38 Misc. Rep. 276, 77 N. Y. Supp. 874.

The creditors, where no sale of real estate to pay debts has been ordered, cannot compel the administrators to account for anything except the goods, chattels, and credits of the deceased. Shumway v. Cooper, 16 Barb. 556; Matter of Woodrorth, 5 Dem. Sur. 156; Matter of Blow's Estate, 2 Con Sur. 360, 11 N. Y. Supp. 193.

"A Surrogate's Court has no jurisdiction over realty left by a decedent, or its avails, unless brought within it by will, or by a statute, for the purpose of being dealt with for some special purpose, like the payment of debts, in case the personalty is inadequate." Matter of Sergent's Estate, 62 Misc. Rep. 173, 116 N. Y. Supp. 273; Sweeney v. Warren, 127 N. Y. 426, 28 N. E. 413, 24 Am. St. Rep. 468.

In this state there is no statute conferring upon administrators or executors authority to take possession of the realty and collect the rents, with a view even to appropriating the same to the payment of the debts of the decedent. Heaton, Surr. Pr. 574, 575.

Rents not due at the time of the decedent's death belong to the heirs. Matter of Strickland, 10 Misc. Rep. 486, 32 N. Y. Supp. 171.

The surrogate, being without jurisdiction, has no power to allow or disallow the items objected to, hence can only order them stricken from the account as was held in Matter of Spears, supra; Matter of Place, 1 Redf. Sur. 276–286.

The interest items paid on Percival and Skerritt mortgages, of $100.49, $127.70, and $45, are stricken from the account. The items of $200 and $72.50 and $69.70 paid on land contracts are stricken from the account.

The following disbursements are stricken from the account for the reason that they were incurred in connection with the management of the real estate, to wit: $2 for electric light; $1.25 drawing satisfaction of real estate mortgage; $7 paid attorney for examination of search of Wm. J. Abbott property; $12.50 and $20 attorney's services in Supreme Court in real estate litigation; also $37.60, costs paid in same action; $3 attorney drawing deed; $2 recording deed; $1 drawing satisfaction of mortgage; and $15 attending sale of real estate.

The item of $10 charged by Administrator Stone, for two days in selling real estate in a real estate proceeding to pay debts, must be disallowed. His commissions fix his compensation.

The item of $3.20, bill paid Percival, is allowed, to be paid pro rata.

Objections 3 and 4 were withdrawn on the trial.

A decree may be entered passing the account as modified.

Decreed accordingly.