EXECUTORS AND ADMINISTRATORS (§ 311*)—ADMINISTRATION OF ESTATE—DISTRIBUTION OF PROCEEDS.

. Where an executor received one-half the proceeds of milk of two separate dairy farms, under two separate contracts made with the testator, which did not terminate until after his death, such proceeds represent the earnings of the testator's personal estate; and where the executor pays them to the devisee of each farm, his accounts will be surcharged therewith, such proceeds to be distributed as directed by the will.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1261, 1262; Dec. Dig. § 311.*]

Judicial settlement of the accounts of the executor of John D. Ellis, deceased. Decree entered.

Josiah Perry, of Utica, for Lizzie May Ellis and Ella Ellis Pryce.

J. W. Rayhill, of Utica, for accounting party and executor, Joseph R. Ellis, individually and as executor.

J. W. Rayhill, of Utica (C. D. Thomas, of Herkimer, of counsel), for Ulysis Ellis, one of legatees.

SEXTON, S. On February 5, 1911, John D. Ellis died, owning, with other property, the "Cruickshank farm" and the "Schuyler farm," so called, which he disposed of by will—the first to Ulysis Ellis, and the second to his brother, Joseph R. Ellis, concluding his will with this clause:

"All the rest, residue and remainder of my estate of every kind, name and nature, real and personal, I give, devise and bequeath as follows: One-half thereof to my said brother, Joseph R. Ellis, and the remainder to be divided equally between my said nieces, or the survivor thereof, Lizzie May Ellis and Ella Ellis, to have and to hold unto their own proper use and benefit forever."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

He appointed said Joseph R. Ellis, executor. Letters testamentary were issued on the 3d day of April, 1911.

The testator, prior to his death, entered into a written contract with one Israel Gilbert for a period of one year from December 1, 1910, to December 1, 1911, which provided that Gilbert was to do all work and to have the use of a dairy of 25 cows belonging to the testator. Each of the parties to the contract was to pay one-half of the taxes, furnish one-half the seed and one-half of all the feed for the stock, and the testator was to furnish any additional hay or fodder not raised on the farm, necessary to carry all live stock to grass, and the milk from the dairy was to be taken to the Donafield Cheese Factory and proceeds divided between the parties to said contract.

Said testator in his lifetime also entered into a renewal agreement in writing with one Joseph Smith, for a period of one year, to begin December 1, 1910, and end December 1, 1911, by the terms of which said Smith agreed to cultivate and work the "Schuyler farm," each party to pay one-half the taxes, and one-half of the necessary seed, and, in case of insufficient hay, each to furnish one-half of the necessary amount, and the proceeds of the farm, or the money realized, was to be divided equally between them. The cows on the farm were owned by the testator, and said Smith was to have the use of them, and the milk produced was to be taken to the Michigan Condensed Milk Company, during the term of said agreement.

After the death of said testator, February 5, 1911, said Gilbert and said Smith continued in possession of said farms until the termination of said respective agreements, and fully complied with the terms thereof. No specific mention is made of said farm contracts in the will. The executor received $371.62, one-half of the proceeds of milk of the "Cruickshank farm," and paid it to Ulysis Ellis, devisee of said farm; and he also received the sum of $674.24, one-half of the proceeds of the milk of the "Schuyler farm," and paid the same to Joseph R. Ellis, devisee of said farm. This disposition of the proceeds of the milk of the two farms was objected to on the accounting by Lizzie May Ellis and Ella Ellis, residuary legatees; each claiming one-fourth thereof under the residuary clause of the will.

The legal status of the parties to these farm contracts is defined in Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415, where the court, upon reviewing the various authorities construing agreements of the character under consideration, says:

"The balance of the authorities above cited seems to be that, notwithstanding the technical terms employed, such an agreement does not amount to a technical lease; that the relation of landlord and tenant is not contemplated, and the portion of the crops reserved to the owner is not rent, but compensation for the use of the land, while the other portion is compensation to the occupier, for his work, labor, and services, etc.; and that the legal possession of the land is in the owner, and the two are tenants in common of the crop." Reynolds v. Reynolds, 48 Hun, 142, and cases cited.

The money in controversy represents simply the earnings or avails of the personal estate of the testator, and must be disposed of in the same manner as any other increase of personalty coming into the hands of the executor. Matter of Strickland, 10 Misc. Rep. 486, 32 N. Y.

Supp. 171. It is conceded that the executor received $1,045.86 as the proceeds of the milk under the two contracts in question; hence his account must be surcharged with said sum, and he must distribute the same as directed by the will.

Decreed accordingly.