In the Matter of the Judicial Settlement of the Account of WILLIAM
S. HOLMES, as Executor, etc., of MARY E. HOLMES, Deceased,
Appellant.   (No. 1)

JOHN D. GUTCHES and Others, Respondents.

*Bank deposit — a delivery of a pass book by a husband to his wife, who draws
checks thereon, constitutes an irrevocable gift — written authority to withdraw
money, given by the wife to the husband — it does not affect the title — a deed, abso-
lute in form — burden of proving that it was given to secure a debt.*

Where a husband deposits money belonging to himself in a bank account stand-
ing in his wife's name and delivers the bank book to her, and the wife signifies
her acceptance of the fund by drawing several checks against the account, the
transaction constitutes an absolute and irrevocable gift of the fund to the
wife.

Where the wife, being in feeble health and living at a considerable distance from
the bank, for the purpose of relieving herself from the necessity of going
to the bank for the purpose of drawing money from the account, writes to the
bank, "Please fix this book so Mr. Holmes can draw it out as well as myself,"
and the cashier thereupon writes upon the book, "W. S. Holmes may draw,"
the transaction does not affect the title to the fund, nor constitute the husband
and wife owners in common of the fund, but makes the husband a mere agent
of his wife, and such agency will terminate at her death.

While it is competent to show by parol or other extrinsic evidence that a deed,
absolute upon its face, was intended as a mortgage, the burden of proof in this
respect is upon the person asserting the deed to be a mortgage, and he is
bound to establish such contention by clear and satisfactory evidence.

APPEAL by the petitioner, William S. Holmes, as executor, etc.,
of Mary E. Holmes, deceased, from a decree of the Surrogate's
Court of the county of Chenango, entered in said Surrogate's Court
on the 25th day of November, 1901, judicially settling his accounts
as such executor.

*Edmund B. Jenks*, for the appellant.

*E. E. Mellon*, for the respondents John D. Gutches and others.

*Nelson P. Bonney*, special guardian, for respondents Inez
Burnap and others.

CHESTER, J.:

The appellant was the husband of the deceased and one of the
executors of her will.   They were married in 1888.   At that time

she was a widow and he well advanced in life. Each then had a small estate. She died in 1897, leaving a deposit in an account in her name in the Binghamton Trust Company amounting to $1,887.02. This account was opened February 27, 1893, by a deposit of $500 to her credit. The only other deposit in this account was one of $1,700 April 20, 1896. There were no other credits except items of interest. At about the time the deposit of $1,700 was made Mrs. Holmes wrote in the bank book to the trust company: "Please fix this book so Mr. Holmes can draw it out as well as myself." The cashier thereupon wrote upon the bank book, "W. S. Holmes may draw." The bank book was usually kept by Mrs. Holmes in her safe in the store of her brother, William H. Burnap, who was also one of the executors of her will, and it was there at the time of her death. There is no proof other than the testimony of Holmes that it was ever in his possession except when he took it to the bank when he went to deposit or withdraw money. On April 22, 1897, after the death of his wife, Holmes procured the bank book, drew out the entire amount of this account and applied it to his own use. Upon his accounting as her executor he did not include this item in his accounts and a legatee filed objections thereto claiming that he should be charged with it. The Surrogate's Court decided that it belonged to the estate of his widow and charged his account with the $1,887.02 and with the interest thereon from April 12, 1898, the time when it should have been paid to the legatees under the will, amounting to $405.70. He was also charged with certain costs to be paid by him personally. From the decree entered upon that decision this appeal is taken. The whole controversy is as to the ownership of this fund, and as to the direction concerning costs.

The claim of Holmes is that, notwithstanding the deposit was in his wife's name, only $300 of it ever belonged to her; that she had withdrawn that sum and invested it in a mortgage and that the entire balance belonged to him.

As to the deposit of $500 Holmes testified that $200 of it was his and $300 his wife's. There was no testimony either in corroboration or denial of this statement, except the testimony of several witnesses to declarations of Mrs. Holmes, in presence of her husband, that the whole fund was hers. Assuming, however, the truth

THIRD DEPARTMENT, JANUARY TERM, 1903.        [Vol. 79.

of the testimony of Holmes that the $200 belonged to him, by depositing it as he did in an account to her credit and delivering the bank book to her followed by her drawing several checks against the account, as the proof shows she did, signifying her acceptance of the fund, he made an absolute and irrevocable gift of it to her. (*People* v. *State Bank of Fort Edward,* 36 Hun, 607 ; affd., 102 N. Y. 740 ; *Matter of Crawford,* 113 id. 560.)

As to the $1,700 deposit the proof shows that on April 18, 1896, Mrs. Holmes conveyed to one Allen property standing in her name valued at $3,500, and received from Allen in exchange a conveyance of property valued at $1,700. The difference, $1,800, was paid by Allen, $25 in cash and $1,775 in a check: This check was taken by Holmes to the Binghamton Trust Company, where he received $75 in cash and deposited the balance, $1,700, to the credit of his wife in the account above mentioned. Holmes insists that his wife held the deed of the property which she conveyed to Allen as security for $1,400 or $1,500 which she had loaned to Holmes, and that that loan had been paid, so that when the exchange was made the money received for the difference in value between the two properties belonged to him and not to his wife. To support this contention he had the testimony of the scrivener who drew the deed, but the credibility of this witness was impeached by six of his neighbors. While it is competent in this State to show by parol or other extrinsic evidence that a deed absolute on its face was intended as a mortgage (*Horn* v. *Keteltas,* 46 N. Y. 605), yet the burden of proof in this respect was upon the appellant and he was bound to establish his contention by clear and satisfactory evidence. (*Haussknecht* v. *Smith,* 11 App. Div. 185 ; affd., 161 N. Y. 663 ; *Wilson* v. *Parshall,* 129 id. 223.) I fail to find evidence of this character on this question in this record, and I think the learned surrogate was fully justified in not giving credit to the testimony which was given.

The fact that Mrs. Holmes gave her husband authority to draw against the account in question does not, in my opinion, affect her ownership of it under the circumstances appearing here, nor did it constitute them owners in common of the fund. The account still remained in her name alone, and the bank was still debtor to her and not to him. The case is to be distinguished from those where

the deposit is made to the credit of two persons, with a permission to either to draw. Mrs. Holmes lived a considerable distance from Binghamton, where the bank was located, and was in feeble health. One witness testified that she said she had the book fixed so Holmes could draw the money out for her, as she did not want to go to Binghamton every time she wanted money to use. This being so, the arrangement was purely for her convenience, and by it he was simply constituted her agent, and this agency ceased at the time of her death.

The question as to the ownership of this fund was one of fact under the proofs, and it was decided adversely to the contention of the appellant by the Surrogate's Court upon sufficient evidence. No good reason appears for disturbing the conclusion there reached.

The determination charging the appellant personally with costs in favor of the guardians *ad litem* was within the discretion of the Surrogate's Court, and the discretion was properly exercised upon the facts appearing here.

The decree should be affirmed, with costs.

Decree of the surrogate unanimously affirmed, with costs.