In the Matter of the Estate of CHARLES I. ENGEL, Deceased.

Surrogate's Court, Kings County, May 29, 1931.

*Arthur F. Engel*, petitioner in person.

*John A. Anderson*, for Augusta J. P. Gonzales, respondent.

*Arnon W. Welch* for Jacob Tschechow, respondent.

*Raymond R. Fiero*, special guardian for Robert Engel and Francis Engel, infants.

WINGATE, S. The extremely acrimonious controversy which has arisen in this accounting proceeding had its inception in two small claims upon notes made by the decedent. The first was that of Augusta J. P. Gonzales in the sum of $200, which had not been rejected by the administrator and was readily admitted by him upon the hearing. The other was a balance of $275 on a note originally in the sum of $400 held by Jacob Tschechow, which also was not only not contested, but upon which the administrator had made at least one payment on account.

With this insignificant beginning, the controversy has grown to an extent which has required four appearances by the parties and their attorneys before the court, and has involved the preparation and submission of twelve separate briefs and memoranda comprising over seven score of typewritten pages.

In the final analysis six questions are presented for the determination of the court. The first, as noted, relates to Mrs. Gonzales' claim of $200 which has been admitted without objection. The second establishes the validity of the Tschechow balance of claim of $275 which the administrator has never disputed. The third concerns the personal claim of the administrator against the estate in the sum of $1,551.53 which was duly proved before the court

and is allowed without objection. The fourth matter concerns certain alleged preferential payments to creditors. Nothing in substantiation of this objection was adduced upon the hearings. On the contrary, it was demonstrated by the administrator that at least two of these sums represented moneys collected by the decedent, who was an attorney, immediately prior to his death and which were held as readily identifiable trust funds for the respective payees.

The elimination of these matters reduces the points at issue to two. The first is an additional claim, filed by Mrs. Gonzales during the course of the proceeding. This is based upon the alleged illegality of a payment to the decedent attorney of the sum of $2,365 for professional services rendered by him in connection with successful prosecution of a claim on her behalf for veterans' compensation. The second contention which is made by both of the objecting parties, is that certain real property which the decedent conveyed by absolute deed during his lifetime, was in reality property of the estate and subject to their claims.

The extended briefs and memoranda submitted are directed almost entirely to these two questions but much of their content is rather more calorific than illuminative.

The facts in connection with the $2,365 claim of Mrs. Gonzales may be briefly summarized as follows: William Franklin Pierce, the son of the claimant, received an injury during his service in the army in the late World War by reason of falling downstairs, and within a month of his enlistment was honorably discharged by reason of resulting disability. About five months later he died following an automobile accident. His war risk insurance premiums had not been paid. His mother presented a claim to the government for $10,000 based on this insurance. This claim was rejected. The present decedent then undertook the prosecution of her case which was vigorously defended. After a six-day trial he succeeded in obtaining a recovery.

In the judgment of recovery in the Federal courts decedent's attorney was allowed a total fee of $417.50 in accordance with the provisions of title 38, part V, section 551 of the United States Code which enactment, as will be hereinafter noted, limited his compensation.

Adopting the view of the facts most favorable to the claimant, it would appear that the decedent attorney received from Mrs. Gonzales a total for services and disbursements in this connection of the alleged $2,365, of which sum disbursements amounted to over $750. All this occurred in or about the year 1925 and no claim was made by her against the attorney or his estate until after these accounting proceedings had come on for hearing.

It was contended in this proceeding on behalf of Mrs. Gonzales that she possessed a claim against the estate of the decedent as a result of these facts to recover the difference between the $471.50 allowed in the judgment of the Federal court and the $2,365 which she insisted she had paid to the attorney. This contention was pressed on the enactment contained in section 619 of title 38 of the United States Code which reads as follows:

" Unlawful fees for services rendered; Punishment. Any person who charges or collects, or attempts to charge or collect, either directly or indirectly, any fee or other compensation for assisting in any manner a veteran, his dependents or other beneficiary under this chapter, in obtaining any of the benefits, privileges or loans to which he is entitled under the provisions of this chapter, shall, upon conviction thereof, be subject to a fine of not more than $500, or imprisonment for not more than one year, or both."

It would seem apparent, however, that the particular portion of the United States Code applicable to the transaction here shown is not this section, but is a portion of title 38 which reads as follows:

" Part V — Penalties. § 551. Amount permitted to be paid agents or attorneys; solicitation, etc., of unauthorized fees or compensation; punishment.— Except in the event of legal proceedings under Section 445 of this chapter, no claim agent or attorney except the recognized representatives of the American Red Cross, the American Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the director shall be recognized in the presentation or adjudication of claims under Parts II, III, and IV of this chapter, and payment to any such attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the bureau shall not exceed $10 in any one case: *Provided,* however, That wherever a judgment or decree shall be rendered in an action brought pursuant to section 445 of this chapter the court, as part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed ten per centum of the amount recovered and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each such payments until paid. Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive, any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than

$500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment."

Section 371 of title 28 of the United States Code reads in part as follows:

" Exclusive jurisdiction of United States courts. The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States:

" First. Of all crimes and offenses cognizable under the authority of the United States.

" Second. Of all suits for penalties and forfeitures incurred under the laws of the United States."

The question for present determination is, therefore, whether section 551 of title 38, which is designated as " penalty," falls within the classification of a crime or offense cognizable only by the United States courts under section 371 of title 28.

Even in the absence of the provisions of section 371 it is, of course, fundamental that the courts of no jurisdiction will execute the penal laws of another (*The Antelope*, 10 Wheat. 66, 123; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 102), and it has been determined in this State that this principle applies to the enforcement of Federal penal statutes.

In *People* v. *Cook* (220 App. Div. 110; affd., 248 N. Y. 597) the court says (at p. 113): " The State courts have no jurisdiction over crimes committed exclusively against the United States. (Fed. Jud. Code [36 U. S. Stat. at Large, 1160], § 256; now U. S. Code, tit. 28, § 371; *Hebert* v. *Louisiana*, 272 U. S. 312.) In the instant case the State court had jurisdiction only if the acts charged, including the selling of intoxicating liquor, created a public nuisance under sections 1530 and 1532 of the Penal Law."

The question then arises as to whether section 551 of title 38 of the United States Code is a penal statute. As noted in *Loucks* v. *Standard Oil Company* (*supra*) this is determinable by the rules of private international law. The court in that case continues (on p. 102): " A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. (*Huntington* v. *Attrill*, 146 U. S. 657, 668; *Huntington* v. *Attrill*, 1893 A. C. 150, 156; *Brady* v. *Daly*, 175 U. S. 148, 154, 157; *Raulin* v. *Fischer*, 1911, 2 K. B. 93; Dicey, Conflict of Laws, p. 209.) The purpose must be, not reparation to one aggrieved, but vindication of the public justice. (*Huntington* v. *Attrill*, 146 U. S. 668; *Brady* v. *Daly*, *supra*.) "

The distinction between a penal statute and one which is remedial

in its nature is authoritatively demonstrated by the Court of Appeals in this case, it being pointed out at page 103 that a statute is remedial and not merely penal where its object is reparation to those aggrieved, the penalty upon the offender being largely secondary in its importance. When tested by these rules, it is obvious that section 551 of the United States Code is purely penal in its character. No remedy of any sort is given to the aggrieved person, the entire purport of the enactment being to punish the individual by whom the inhibited act is performed.

It must follow, therefore, that if the decedent in this proceeding actually received from Mrs. Gonzales any sum in excess of that allowed by statute, he is not and was not answerable in any court of the State of New York for his act in this connection. It is furthermore questionable whether even in the Federal courts any remedy was ever available to Mrs. Gonzales, except to procure his prosecution in criminal proceedings.

Even if it be granted, therefore, that the sum paid to the attorney approximated thirty-three and one-half per cent of the recovery effected by him in the case, there is nothing in the laws of New York which rendered such payment by the client or its receipt by the attorney improper in law, particularly where, as was apparently here the case, such payment was voluntarily made.

The next question for determination relates to the premises known as 318 Senator street, Brooklyn, concerning which the attitude of at least one of the respondents demonstrates a misconception of the responsibility and accountability of the administrator. The answer of Mrs. Gonzales contains the prayer " that the said administrator be surcharged with the sum of $19,100, same being the interest of the decedent in the premises No. 318 Senator Street in the Borough of Brooklyn, County of Kings, State of New York."

This prayer is one of the concluding paragraphs of the answer which expressly sets forth that the administrator in his official capacity never took charge of such premises.

It is fundamental that the representative of an intestate estate possesses merely those functions which his title implies, namely, those of administrator of the goods, chattels and credits of the particular intestate. In his official capacity he receives no interest in any real property or chattels real of which the intestate was the owner. It is, of course, a fact that under sections 232 *et seq.* of the Surrogate's Court Act, proceedings are contemplated by which rights over real estate may be obtained by him. But such a result can be attained only consequent upon a special proceeding brought by the administrator on showings of fact in compliance with

the requirements of the sections in question. Absent such proceedings, it is fundamental that an administrator as such has no right or authority over real estate. This has been repeatedly held.

In *Dunning* v. *Ocean National Bank* (61 N. Y. 497) the court says (at p. 501): "At the common law, an executor or administrator had nothing to do with any thing, save the mere personal assets of the testator or intestate; and it is now the law that an administrator has no further authority, save where, by statute, he may apply to a court of competent jurisdiction, upon a proper state of facts, for the sale of the real estate of his intestate, for the payment of his debts."

Similar determinations may be found in *Mele* v. *Bonagura* (172 App. Div. 893); *Priester* v. *Hohlock* (70 id. 256, 258); *Shumway* v. *Cooper* (16 Barb. 556, 559); *Matter of Roberts* (72 Misc. 625, 628, 629, 630); *Matter of Woodworth* (5 Dem. 156, 160); *Matter of Blow* (11 N. Y. Supp. 193, 196, 197).

It is, of course, obvious that an administrator is not liable as such in matters over which he is given and possesses no authority, and such is the case respecting real estate where no powers in respect to it have been expressly given him by court order in the special proceeding authorized for that purpose. It follows, therefore, that the relief prayed against the administrator in respect to the real estate and the effort to surcharge his accounts by reason of his having failed to include the Senator street property in his accounting must fail.

Section 236 of the Surrogate's Court Act, however, contemplates a proceeding by creditors upon a final accounting to make real property interests of an intestate answerable for unpaid debts, and this phase of the relief here sought, directed against the holders of the legal title to the Senator street property, must, therefore, receive consideration. These holders are the infant heirs of the intestate who are represented in this proceeding by their special guardian.

The premises in question were originally owned by the decedent. They were conveyed by him in his lifetime to one Edward Dannemiller by full covenant and warranty deed, dated and executed on December 14, 1928, and duly recorded on December 17, 1928. This transfer was subject to mortgages aggregating $7,000. The consideration recited in the conveyance is one dollar and other valuable considerations.

On October 31, 1929, Dannemiller conveyed this property to " Arthur F. Engel * * *, as guardian for Robert and Francis Engel, children of Charles I. Engel, deceased, in trust for the said Robert and Francis Engel." Since no terms of a trust nature

appear in the deed or otherwise, it would seem that title to the property had vested in the infants. (Real Prop. Law, § 93; *Sinnott* v. *McLaughlin*, 198 App. Div. 630.)

It is the contention of the respondents that the original conveyance by the decedent to Dannemiller, while absolute in form, was intended merely as security for a debt and that, in consequence, the intestate, at his death, was the equitable owner of the property.

The law applicable to such a contention is well settled and is succinctly stated in *Ensign* v. *Ensign* (120 N. Y. 655, at p. 656): " This action was begun February 19, 1886, to have a deed, absolute on its face, executed and delivered by the plaintiff to the defendant October 24, 1884, and recorded January 2, 1885, adjudged to be a mortgage. The rule that such a deed may, in an action between the parties to it, be shown by oral evidence, to have been given and received to secure the payment of a debt, is firmly established in this state. * * * The burden of establishing an oral defeasance to such a deed is an onerous one resting on whoever alleges it, and its existence, and also its precise terms, must be established by clear and conclusive evidence, otherwise the strong presumption that the deed expresses the entire contract between the parties to it is not overcome. A conveyance of land in fee so executed, acknowledged and recorded is of too great solemnity and of too much importance to be set aside or converted into a mere security upon loose or uncertain testimony, and it will not be unless the existence of the alleged oral defeasance is established beyond a reasonable doubt."

This principle has been reiterated and reaffirmed in many cases, among which may be noted *Wilson* v. *Parshall* (129 N. Y. 223, 225); *Haussknecht* v. *Smith* (11 App. Div. 185, 187; affd., 161 N. Y. 663); *Matter of Holmes* (79 App. Div. 264, 266); *Melenky* v. *Melen* (206 id. 46, 49), and *Bascombe* v. *Marshall* (129 id. 516, 518).

As a result, the burden is cast upon the respondents of establishing " the alleged oral defeasance * * * beyond a reasonable doubt."

Had the title remained in Dannemiller, this issue would have lain between the respondents and him. In view of the conveyance to the infants, it is between the latter and respondents. This point is to be carefully borne in mind. The administrator, either individually or in a representative capacity, is no party to this controversy, consequently admissions by him, if they may be so termed, as offered in evidence and admitted subject to the objection of the special guardian for the infants, have no probative value, not being binding upon the latter.

At the outset of this inquiry, the objection is made that this

court has no jurisdiction to determine this question of title. Such objection would undoubtedly have been well taken prior to October 1, 1921, when the broadening effect of the amendments to section 40 of the Surrogate's Court Act became law, but it has now been an arrant anachronism for almost a decade. (*Matter of Wilson*, 252 N. Y. 155, 158; *Matter of Akin*, 248 id. 202, 205; *Matter of Raymond* v. *Davis*, Id. 67, 71; *McLean* v. *Hart*, 228 App. Div. 379, 381; *Matter of Seaman*, 205 id. 681, 686; *Matter of Van Buren* v. *Estate of Decker*, 204 id. 138, 140; *Matter of Morris*, 134 Misc. 374, 382.) In the last cited case this court, after a reasonably exhaustive review of authorities, said: "It is believed that no reasonable construction of this statute could be made which did not hold that the Surrogates' Courts now possess entirely unlimited jurisdiction over any and every legal and equitable question which may ever arise in connection with decedents' estates and the relations of guardians and wards so far as it concerns any person actually or constructively before the court by reason of any right in, claim to, or obligation in connection with, a decedent's or ward's estate."

So far as this court is concerned, it has found no subsequent authority inclining it to modify the basic principle thus stated. Indeed the pertinent decisions of the Court of Appeals and Appellate Divisions, rendered since this statement was made, have all tended to confirm the court in its belief that this excerpt represents the true scope and authority of the surrogate's jurisdiction.

Since the court thus determines that it has the power to decide the question of title to this property as between the respondents and the infant owners, the sole question remaining for decision is whether the former have demonstrated "beyond a reasonable doubt" that the conveyance from the decedent to Dannemiller was given as security for a debt and not, as recited in the deed, as vesting absolute ownership. For this purpose, the contents of the record must be analyzed.

The position of the respondent Tschechow in this regard is frankly stated by his counsel at page 39 of the record: "Mr. Welch: If your honor please, all my case consists of is the pleading and some verified records filed by Mr. Engel as guardian in this estate."

As there is no pleading by the infants and the statements of Mr: Engel are not binding upon them, this admission is tantamount to a statement that, so far as this respondent is concerned, the record is bare of probative matter.

The only testimony respecting the value of the property is that given by Mr. Engel, who, while stating (S. M. p. 68) that he was no expert on realty values, said that he thought the value of the property was "about $8,000; maybe a little more." (S. M.

p. 69.) The recitals in the deed show that it was conveyed subject to mortgages aggregating $7,000. Engel testified that it had been his understanding that the decedent was indebted to Dannemiller in the sum of about $500 and that this was the only consideration for the deed. (S. M. pp. 58, 66.) What the basis, if any, of this belief was, does not appear. In any event it appears that Dannemiller emphatically denied it (S. M. pp. 61, 62, 68), claiming that the property was absolutely his. (S. M. p. 65.) Even if Engel's apparently unsupported supposition was correct that the only consideration received by the decedent was a cancellation of a $500 debt, the transaction, on any facts appearing in the record, was neither extraordinary nor unconscionable. The only equity which he is shown to have possessed is approximately $1,000 — a one-eighth interest — and it is familiar knowledge to all that, under such circumstances, many an owner is glad to get rid of property without any consideration, *a fortiori*, with the receipt of fifty per cent of his paper interest.

Stress is laid by respondents on the alleged fact that the decedent collected the rentals during his lifetime, but the record is devoid of any demonstration that he collected them in his individual capacity and for his own benefit. Indeed, the natural inference from the testimony of Mrs. Norwood, decedent's secretary, was to the contrary. She stated that promptly after the decedent's death, Dannemiller demanded that the rentals be paid to him direct, and that this was the cause of some concern to the tenants, " since they were heretofore *paying it to our office*, they did not know who to pay it to." (S. M. p. 72.) The decedent was an attorney. It is certainly no extension of the field of judicial notice to take cognizance of the fact that attorneys frequently manage real property for their clients, which activity may include the collection of rentals. The natural inference of the statement of payment " to our office " would seem to be that such payment to the decedent was in the capacity in which he conducted the office, namely, as attorney, and that he received them as attorney for the record owner of the fee, Dannemiller.

The final fact on which respondents seek to base an inference that the original transaction was a mortgage, is that Dannemiller, after collecting about $1,100 in rentals, deeded the property to the infants for $496. (S. M. p. 66.) In the opinion of the court this fact is entirely inadequate for the support of any such inference. Even if the value of the property was greater than that demonstrated by the record, it is fortunately not so rare an occurrence as to seem extraordinary, that a man interested in two orphans of six and eight years, who have been left at the mercy of the world

by the death of an insolvent father, should aid in making it possible for their uncle to keep them from penury or want. Especially true is this here, where it has not been shown that the transaction as a whole was not financially profitable to this father of the god-father (S. M. p. 74) of one of the children.

The motive which inspired Dannemiller's action may have been any one of many. It may have been generosity; it may have been that he felt that he had driven a hard bargain with the decedent and wished to make some reparation; it may have been that he felt the property to be more of a liability than an asset and was glad to rid himself of it. Any one of these is just as reasonable as that contended for by respondents and any one would negative their right to subject the property to their debts. Which of the several alternatives is the correct explanation of the act need not be determined by the court. Their mere presence demonstrates that respondents have not sustained the burden which the law imposes upon them of proving their contention "beyond a reasonable doubt."

It follows, therefore, that after this long and acrimonious contest, with its not inconsiderable waste of the time of all concerned, including the court, the respondent Tschechow is exactly in the position in which the accountant placed him in his accounts, and the $200 claim of the respondent Gonzales, which was never contested and was admitted on the 2d page of the record, is allowed. This claim is entitled to the same *pro rata* payment as that made to other creditors, and it would, no doubt, have received it ere this but for the tardiness of its presentation.

It is the duty of the administrator to dispose of the remaining personalty of the estate and to distribute it *pro rata* among all the creditors, including himself. This he will do within ninety days from the entry of the decree herein, or, in the event of an appeal, within ninety days from the entry of a judgment thereon, and he will also, within such period, file a supplemental account and proceed to close this estate.

It seems apparent to the court that the respondents in this proceeding have attempted to capitalize the nuisance value of their claims, which course is to be discouraged. Since the only relief granted the respondent Gonzales is the allowance of her claim which was never rejected, no costs will be allowed her herein. The respondent Tschechow has failed in every contention advanced and the estate will, therefore, be awarded a full bill of costs against him.

Proceed accordingly.